PETITION FOR WRIT OF MANDAMUS
This is a petition for writ of mandamus challenging the constitutionality of the capital offense defined in Ala. Code 1975, § 13A-5-40(a)(15), which we term "child murder."
The petitioner, 37-year-old Susan Amelia Woodard was indicted for the capital murder of 15-month-old Elizabeth B. Dowe Franklin. The events that form the basis of the State's case occurred on December 29, 1992, and January 6, 1993. On these two dates, the infant was under the care of petitioner, a licensed day-care person, who allegedly shook the infant and allegedly caused the infant to hit her head on the floor. The infant died on January 6, 1993, " 'as a result of complications of a closed head injury resulting in subdural hematoma and cerebral edema.' " Order of the circuit court, August 12, 1993, p. 3.
On April 28, 1993, the petitioner moved to dismiss the indictment, arguing that the statute on which the indictment was based, Ala. Code 1975, § 13A-5-40(a)(15), was unconstitutional. On July 2, 1993, the trial court held a hearing on the matter. On August 3, 1993, the trial court issued a written order denying the motion to dismiss and upholding the statute. That order was supplemented by a second order dated August 12, 1993, in which the trial judge set out the State's factual allegations and postponed the trial of the case to allow the petitioner the opportunity to seek appellate review of the denial of the motion to dismiss the indictment.
This Court is well aware that "[p]etitions for writ of mandamus cannot be substituted for appeals to review adverse legal rulings of lower courts." Ex parte Martin,598 So.2d 1381, 1383 (Ala. 1992). Because the petitioner could ultimately challenge on direct appeal from any conviction the trial court's denial of her motion to dismiss, that matter is not properly reviewable by petition for writ of mandamus. See Exparte Fowler, 574 So.2d 745, 747 (Ala. 1990). " 'This for the reason, that appellate courts will not hear causes in piecemeal.' " Id. (quoting Koonce v. Arnold, 244 Ala. 513, 514,14 So.2d 512, 515 (1943)). Nevertheless, in the interests of *Page 1067 
judicial economy and under the authority granted this Court by § 12-3-11, we deem it appropriate to address the merits of this petition. See Ex parte Jackson, 614 So.2d 405 (Ala. 1993) (reviewing on petition for writ of mandamus trial court's denial of defendant's motion to dismiss).
Act No. 92-601, 1992 Ala. Acts 1247, amended Alabama's Criminal Code § 13A-5-40 to include as a capital offense "[m]urder when the victim is less than fourteen years of age." Ala. Code 1975, § 13A-5-40(a)(15). As this Court understands the petitioner's arguments, the petitioner contends that this child-murder provision is unconstitutional because 1) it is arbitrary, overbroad, and discriminatory in that it predicates the capital offense solely on the age of the victim; 2) the subsection is vague and fails to sufficiently narrow the class of people which may become "death eligible"; and 3) the subsection "is contradictory and in diametric opposition to the legislative intent which underlies the purpose of the statute as a whole" because the subsection does not include as an element of the offense at least one of the aggravating factors listed in § 13A-5-49. (Petition for writ of mandamus at 8.) We reject each of these arguments.
 I
Section 13A-5-40(a)(15), the child-murder provision of Alabama's capital offense statute is not unconstitutionally overbroad.
 " 'The overbreadth doctrine derives from the First Amendment, see Young v. American Mini Theaters, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976); Parker v. Levy, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974), and serves to invalidate legislation so sweeping that, along with its allowable proscriptions, it also restricts constitutionally-protected rights of free speech, press, or assembly, see e.g., Coates v. Cincinnati, 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971). Since there are no First Amendment rights at stake here, the overbreadth doctrine does not apply. See Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 497 n. 9, 102 S.Ct. 1186, 1192 n. 9, 71 L.Ed.2d 362 (1982).' "
McCall v. State, 565 So.2d 1163, 1165 (Ala.Cr.App. 1990).
 "The doctrine of overbreadth recognizes that a state legislature may have a legitimate and substantial interest in regulating particular behavior, but 'that purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved.' Shelton v. Tucker, 364 U.S. 479, 488
[81 S.Ct. 247, 252, 5 L.Ed.2d 231] . . . (1960). Historically, the overbreadth doctrine has been used by the federal courts to prevent a chilling effect on First Amendment freedoms. Note, The First Amendment Overbreadth Doctrine, 83 Harv.L.Rev. 844, 852 (1970). . . . However, the overbreadth doctrine under the Alabama Constitution has been applied in due process cases not involving first amendment freedoms. See Ross Neely Express, Inc. v. Alabama Department of Environmental Management, 437 So.2d 82 (Ala. 1983).
 "Justice Adams, for the full Court in Ross Neely Express, wrote:
 " 'The right to due process is guaranteed to the citizens of Alabama under the Alabama Constitution of 1901, Article 1, Sections 6 and 13. This constitutional right to due process applies in civil actions as well as criminal proceedings. Pike v. Southern Bell Telephone and Telegraph Co., 263 Ala. 59, 81 So.2d 254 (1955). The courts have found that this right is violated when a statute or regulation is unduly vague, unreasonable, or overbroad. . . .'
 " 'In reviewing a regulation of a county Board of Health, this court held that the central issue was reasonableness. Baldwin County Board of Health v. Baldwin County Electric Membership Corporation, 355 So.2d 708 (Ala. 1978). In City of Russellville v. Vulcan Materials Co., 382 So.2d 525 (Ala. 1980), this court said:
 " ' "The validity of a police power regulation . . . primarily depends on whether, under all the existing circumstances, the regulation is reasonable, and whether *Page 1068 
it is really designed to accomplish a purpose properly falling within the scope of the police power. Crabtree v. City of Birmingham, 292 Ala. 684, 299 So.2d 282 (1974). Otherwise expressed, the police power may not be employed to prevent evils of a remote or highly problematical character. Nor may its exercise be justified when the restraint imposed upon the exercise of a private right is disproportionate to the amount of evil that will be corrected. Bolin v. State, 266 Ala. 256, 96 So.2d 582, conformed to in 39 Ala. App. 161, 96 So.2d 592 (1957)." '
 " 'Statutes and regulations are void for overbreadth if their object is achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms. See Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); Keyishian v. Board of Regents, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967).'
"437 So.2d at 84-85."
Friday v. Ethanol Corp., 539 So.2d 208, 215-216 (Ala. 1988).
We find that Ala. Code 1975, § 13A-5-40(a)(15), is reasonable and invades no area of protected freedoms. The only act forbidden by that subsection is an intentional killing — a murder. The appellant has no right to murder a 15-month-old child. Murder is not a constitutionally protected activity.
 "[A] physical assault is not by any stretch of the imagination expressive conduct protected by the First Amendment. See Roberts v. United States Jaycees, 468 U.S. 609, 628, 104 S.Ct. 3244, 3255, 82 L.Ed.2d 462 (1984) ('[V]iolence or other types of potentially expressive activities that produce special harms distinct from their communicative impact . . . are entitled to no constitutional protection'); NAACP v. Claiborne Hardware Co., 458 U.S. 886, 916, 102 S.Ct. 3409, 3427, 73 L.Ed.2d 1215 (1982) ('The First Amendment does not protect violence')."
Wisconsin v. Mitchell, 508 U.S. ___, ___, 113 S.Ct. 2194, 2199,124 L.Ed.2d 436, 444-45 (1993).
 II
Section 13A-5-40(a)(15) is not unconstitutionally vague.
 " 'The doctrine of vagueness, . . . originates in the due process clause of the Fourteenth Amendment, see Lanzetta v. New Jersey, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939), and is the basis for striking down legislation which contains insufficient warning of what conduct is unlawful, see United States v. National Dairy Products Corporation, 372 U.S. 29, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963).
 " 'Void for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed. United States v. Harriss, 347 U.S. 612, 617, 74 S.Ct. 808, 811, 98 L.Ed. 989, 996 (1954). A vague statute does not give adequate "notice of the required conduct to one who would avoid its penalties," Boyce Motor Lines v. United States, 342 U.S. 337, 340, 72 S.Ct. 329, 330, 96 L.Ed. 367, 371 (1951), is not "sufficiently focused to forewarn of both its reach and coverage," United States v. National Dairy Products Corporation, 372 U.S. at 33, 83 S.Ct. at 598, 9 L.Ed.2d at 566, and "may trap the innocent by not providing fair warning," Grayned v. City of Rockford, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222, 227-28 (1972).
 " 'As the United States Supreme Court observed in Winters v. New York, 333 U.S. 507, 68 S.Ct. 665, 92 L.Ed. 840 (1948):
 " ' "There must be ascertainable standards of guilt. Men of common intelligence cannot be required to guess at the meaning of the enactment. The vagueness may be from uncertainty in regard to persons within the scope of the act, or in regard to the applicable tests to ascertain guilt." '
 " '333 U.S. at 515-16, 68 S.Ct. at 670, 92 L.Ed.2d [at] 849-50 [citations omitted].'
 "McCrary v. State, 429 So.2d 1121, 1123-24
(Ala.Cr.App. 1982), cert. denied, 464 U.S. 913, 104 S.Ct. 273, 78 L.Ed.2d 254 (1983)." *Page 1069 
McCall v. State, 565 So.2d 1163, 1165 (Ala.Cr.App. 1990).
 "It is well settled that, in order to pass constitutional muster, a penal statute must 'define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.' Kolender v. Lawson, 461 U.S. 352, 357, 103 U.S. 1855, 1858, 75 L.Ed.2d 903 (1983) (citations omitted).
 " 'Due process requires that all "be informed as to what the State commands or forbids," Lanzetta v. New Jersey, 306 U.S. 451, 453, 59 S.Ct. 618, 619, 83 L.Ed. 888 (1939), and that "men of common intelligence" not be forced to guess at the meaning of the criminal law. Connally v. General Construction Co., 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926).'
 "Smith v. Goguen, 415 U.S. 566, 574, 94 S.Ct. 1242, 1248, 39 L.Ed.2d 605 (1974)."
Senf v. State, 622 So.2d 435 (Ala.Cr.App. 1993). Here, §13A-5-40(a)(15) provides fair warning of what is forbidden. SeeRose v. Locke, 423 U.S. 48, 96 S.Ct. 243, 46 L.Ed.2d 185
(1975). Clearly, this section informs ordinary people of the prohibited conduct. See Wright v. State, 599 So.2d 637, 638
(Ala.Cr.App.), cert. denied, 609 So.2d 452 (Ala. 1992).
Furthermore, the petitioner has no legitimate ground to complain that § 13A-5-40(a)(15) is unclear as to her conduct.
"Vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in light of the facts of the case at hand." Jordan v. State, 411 So.2d 816, 818
(Ala.Cr.App. 1981).
 "[B]ecause '[t]he essential purpose of the "void for vagueness" doctrine is to warn individuals of the criminal consequences of their conduct,' Jordan v. De George, 341 U.S. 223, 230, 71 S.Ct. 703, 707, 95 L.Ed. 886 (1951), '[o]ne to whose conduct a statute clearly applies may not successfully challenge it for vagueness,' Parker v. Levy, 417 U.S. 733, 756, 94 S.Ct. 2547, 2562, 41 L.Ed.2d 439 (1974), 'even though the statute may well be vague as applied to others,' Aiello v. City of Wilmington, 623 F.2d 845, 850 (3d Cir. 1980). Therefore, a defendant who challenges a statute on the grounds of vagueness 'must demonstrate that the statute under attack is vague as applied to his own conduct, regardless of the potentially vague applications to others.' Aiello, 623 F.2d at 850 (emphasis added). Accord Rode v. Dellarciprete, 845 F.2d 1195, 1199-1200 (3d Cir. 1988)."
Senf, 622 So.2d at 437 (footnote omitted). The petitioner has failed to meet that burden.
 III
The petitioner claims that the § 13A-5-40(a)(15) is unconstitutional because it is arbitrary and because the subsection fails to sufficiently narrow the class of people that may become "death eligible." We reject these contentions.
 "A capital sentencing scheme must, in short, provide a ' "meaningful basis for distinguishing the few cases in which [the death penalty] is imposed from the many cases in which it is not." ' [Gregg v. Georgia, 428 U.S. 153, 188, 96 S.Ct. 2909, 2932, 49 L.Ed.2d 859 (1976)], quoting Furman v. Georgia, [408 U.S. 238, 313, 92 S.Ct. 2726, 2763, 33 L.Ed.2d 346 (1972)] (White, J., concurring).
 "This means that if a State wishes to authorize capital punishment it has a constitutional responsibility to tailor and apply its law in a manner that avoids the arbitrary and capricious infliction of the death penalty."
Godfrey v. Georgia, 446 U.S. 420, 427-428, 100 S.Ct. 1759,1764, 64 L.Ed.2d 398, 406 (1980).
Alabama's capital offense statute includes a sentencing scheme that is neither arbitrary nor capricious. Ex parte Hays,518 So.2d 768, 774 (Ala. 1986); Daniels v. State, 534 So.2d 628,642-45 (Ala.Cr.App. 1985), aff'd, 534 So.2d 656 (Ala. 1986), cert. denied, 479 U.S. 1040, 107 S.Ct. 898, 93 L.Ed.2d 850
(1987).
 "The Supreme Court has required heightened reliability in the imposition of the death penalty, but the Court has not mandated any particular state statutory *Page 1070 
approach to capital punishment. To minimize the risk of arbitrary action and provide individualized sentencing, however, the Court has imposed two general requirements on the capital sentencing process. First, a state must channel the sentencer's discretion in order to 'genuinely narrow the class of persons eligible for the death penalty and . . . [thus] reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder.' Second, the State may not limit the sentencer's consideration of any relevant evidence that might lead the sentencer to decline to impose the death penalty.
 "The required narrowing of the class of death-eligible defendants may occur at either the guilt or the sentencing phase of a capital trial. When narrowing is accomplished during the sentencing phase, the sentencer determines whether certain characteristics of the crime, known as aggravating circumstances, distinguish the gravity of the offense so as to justify the imposition of the death penalty."
Daniel F. McInnis et al., Project, Twenty-Second Annual Reviewof Criminal Procedure: United States Supreme Court and Courtsof Appeals 1991-1992, 81 Geo.L.J. 853, 1471-73 (1993) (footnotes omitted).
The required narrowing of the class of death-eligible defendants accused of violating § 13A-5-40(a)(15) occurs at the sentencing phase of the capital trial when the sentencer must determine the existence of at least one of the aggravating circumstances listed in § 13A-5-49. See §§ 13A-5-46(e);13A-5-47(d) and (e). Furthermore, "It]he statutory aggravating circumstances may not be added to or expanded." Nelson v.State, 405 So.2d 392, 400 (Ala.Cr.App. 1980), reversed on other grounds, 405 So.2d 401 (Ala. 1981).
In order for a defendant to be sentenced to death upon a conviction under § 13A-5-40(a)(15), the defendant must be guilty of the intentional murder of a child under the age of 14 years and the sentencer must find the existence of at least one of the aggravating circumstances enumerated in § 13A-5-49, thereby narrowing the class of "death-eligible" defendants.
 IV
The petitioner asserts that § 13A-5-40(a)(15) is unconstitutional because it "is contradictory and in diametric opposition to the legislative intent which underlies the purpose of the statute as a whole." The gist of her argument is that a capital offense defined in § 13A-5-40 must include as an element at least one of the aggravating circumstances set forth in § 13A-5-49. This argument is without merit.
Under our current statutory scheme, a "capital offense" is "[a]n offense for which a defendant shall be punished by a sentence of death or life imprisonment without parole according to the provisions of . . . [A]rticle [2 of Chapter 5 of Title 13A]." § 13A-5-39(1) (emphasis added). The specific forms of conduct that the legislature has declared to be "capital offenses" are set forth in § 13A-5-40 (Supp. 1993). Each of these offenses consists of an intentional murder coupled with some other element, e.g., that the murder was committed during the commission of certain other felonies (kidnapping, robbery, rape, sodomy, burglary, sexual abuse, and arson), §13A-5-40(a)(1), (2), (3), (4), (8), and (9); that the murder was committed for pecuniary gain, § 13A-5-40(a)(7); and that the victim was a law enforcement officer, § 13A-5-40(a)(5). Although this "other element" is sometimes referred to as an "aggravating circumstance," Kuenzel v. State, 577 So.2d 474,490 (Ala.Cr.App. 1990), affirmed, 577 So.2d 531 (Ala.), cert. denied, ___ U.S. ___, 112 S.Ct. 242, 116 L.Ed.2d 197 (1991);Crowe v. State, 485 So.2d 351, 367 (Ala.Cr.App. 1984), reversed on other grounds, 485 So.2d 373 (Ala. 1985), cert. denied,477 U.S. 909, 106 S.Ct. 3284, 91 L.Ed.2d 573 (1986), the § 13A-5-40
"other element" should not be confused with the statutory aggravating circumstances set out in § 13A-5-49.
A number, but not all, of the § 13A-5-40 capital offenses include as "other elements" conduct that clearly corresponds to one or more of the aggravating circumstances specified in §13A-5-49. For example, the capital offenses of intentional murder during a rape, § 13A-5-40(a)(3), intentional murder during *Page 1071 
a robbery, § 13A-5-40(a)(2), intentional murder during a burglary, § 13A-5-40(a)(4), and intentional murder during a kidnapping, § 13A-5-40(a)(1), parallel the aggravating circumstance that "[t]he capital offense was committed while the defendant was engaged . . . [in a] rape, robbery, burglary or kidnapping," § 13A-5-49(4). However, other capital offenses, such as intentional murder during a sodomy, § 13A-5-40(a)(3), intentional murder during sexual abuse, § 13A-5-40(a)(8), the intentional murder of two or more persons by one act or course of conduct, § 13A-5-40(a)(10), and the offense of which the petitioner is accused, the intentional murder of a child, §13A-5-40(a)(15), do not parallel any aggravating circumstance enumerated in § 13A-5-49. See Ex parte Kyzer, 399 So.2d 330,334 (Ala. 1981) (recognizing as "an anomaly" in the former capital offense statutes that "there [wa]s a corresponding aggravating circumstance for most, but not all, of the aggravated offenses").
The fact that § 13A-5-40(a)(15) does not parallel a statutory aggravating circumstance does not render that section "contradictory and in diametric opposition to the legislative intent which underlies the purpose of the statute as a whole." To the contrary, the legislature has clearly classified certain crimes as "capital offenses," § 13A-5-40, and it has set the minimum punishment for such crimes as imprisonment for life without parole, see §§ 13A-5-45(f); 13A-5-46(e)(1). This is no different from the legislature's classifying other offenses for purposes of punishment and establishing minimum and maximum punishments for each classification. See §§ 13A-5-3; 13A-5-6;13A-5-7. A greater punishment — death — may be imposed on a defendant convicted of a capital offense, but only if one or more of the aggravating circumstances enumerated in § 13A-5-49
is found to exist and that aggravating circumstance(s) outweighs any mitigating circumstance(s) that may exist. See §§13A-5-45(f); 13A-5-46(e); 13A-5-47(e). Cf. Ex parte Kyzer, 399 So.2d at 334 (under former capital offense statutes, death sentence could not be upheld where defendant was convicted of the intentional murder of three persons in one course of conduct, but no statutory aggravating circumstances existed);Holladay v. State, 549 So.2d 122, 133 (Ala.Cr.App. 1988) (death sentence upheld where defendant was convicted of the intentional murder of three persons in one course of conduct and two § 13A-5-49 aggravating circumstances existed), affirmed, 549 So.2d 135 (Ala.), cert. denied, 493 U.S. 1012,110 S.Ct. 575, 107 L.Ed.2d 569 (1989).
From the foregoing, it is clear that the petitioner is incorrect in her assertion that a defendant convicted of the capital offense of child murder is "death eligible" based solely on the age of the victim. As the trial court stated: "When no aggravating circumstance mirrors the capital offense, the defendant does not become death eligible until the State proves an aggravating circumstance in the punishment phase." Order of the circuit court, August 3, 1993, at 6 n. 6.
 V
Finally, we reject the petitioner's argument that § 13a-5-40(a)(15) is arbitrary. In this regard, in its order of August 3, 1993, the trial court found:
 "Neither Johnson[1] nor Woodard have cited the Court to any authority which held a death punishment statute unconstitutional because the statute defines the capital offense based on the age of the victim or because the statute considered the age of the victim as an aggravating factor. The authority appears to be to the contrary. People v. Odle
[128 Ill.2d 111, 131 Ill.Dec. 53, 65-66, 538 N.E.2d 428, 440-41 (1988), cert. denied, 497 U.S. 1031, 110 S.Ct. 3289, 111 L.Ed.2d 798 (1990)] [court upheld sentence of death where the "death eligible" factor was that the murdered individual was under 12 years of age and the death resulted from exceptionally brutal or heinous behavior indicative of wanton cruelty]. *Page 1072 
There are decisions of the United States Supreme Court which utilized a proportionality analysis to find that a particular offense does not justify the death penalty, e.g. Enmund v. Florida, 458 U.S. 782 [102 S.Ct. 3368, 73 L.Ed.2d 1140] (1982) (the death penalty is unconstitutional where the defendant is convicted of a felony murder); Coker v. Georgia, 433 U.S. 584 [97 S.Ct. 2861, 53 L.Ed.2d 982] (1977) (the death penalty is constitutionally excessive punishment for rape). However, when, in the opinion of the legislature, a class of victims require special protection and the statutory scheme provides a meaningful method of narrowing the class of defendants who are death eligible, the statute is not constitutionally infirm.
 "The age criteria in the Act has a historical basis in Alabama law. At common law a child over 7 but less than 14 was presumed to be incapable of committing a felonious criminal offense. Hampton v. State [1 Ala. App. 156], 55 So. 1018
(Ala.Cr.App. 1911). This presumption was rebuttable. Section 13A-3-3 changed the common law, and it provides that no person under 14 can be prosecuted for a criminal offense. Historically, the rationale given for this rule was that the child lacked sufficient discretion to appreciate the criminality of his conduct, Hampton; or that the child did not possess sufficient mental capacity or lacked the requisite guilty knowledge of the wrongfulness or wickedness of the act charged, Key v. State
[4 Ala. App. 76], 58 So. 946 (Ala.Ct.App. 1912); or the child could not comprehend the wrongfulness of his guilty act, Ragsdale v. State [12 Ala. App. 1], 67 So. 783 (Ala.Ct.App. 1914).
 "The recognition of 14 as a level of maturity sufficient to shift responsibility to a child for his acts is reflected in other areas of Alabama law. Section 15-16-2 provides that every person over 14 is presumed, in terms of their mental state, to be responsible for their acts. Section 26-2A-76 provides that a minor 14 or older may nominate a guardian, and § 26-2A-72 provides that a minor 14 or older may prevent the appointment of a particular guardian. Section 12-15-34 provides that the juvenile court can transfer a case to the circuit court for prosecution only when the child is over 14 years of age.
 "The Court concludes that inasmuch as the legislature has concluded as a matter of public policy that children over 14 are mature enough to be responsible for their acts, the converse is likewise true, i.e., that children under 14 require special protection. Therefore, the legislatures' policy decision to select 14 as a component of the capital offense is neither arbitrary nor capricious."
Order of circuit court, August 3, 1993 at 9-11 (footnotes omitted).
As noted by the Attorney General in its answers to the petition, the Alabama Legislature in other subsections of §13A-5-40, has seen fit to provide the death penalty for the intentional killing of a member of certain classes of persons, including a police officer or other specified law enforcement officers (subsection (a)(5)), a public official (subsection (a)(11)), and a witness (subsection (a)(14)). The "cop killing" capital murder provision was upheld in Ex parte Harrell470 So.2d 1309 (Ala.), cert. denied, 474 U.S. 935, 106 S.Ct. 269,88 L.Ed.2d 276 (1985).
In the Alabama Criminal Code alone, the Alabama Legislature has repeatedly recognized that children are entitled to certain protections not afforded adults. See § 13A-3-3 ("The prosecution of any person as an adult shall be barred if the offense was committed when the actor was less than 14 years old."); § 13A-6-40(1)(b) (defining "restrain" in connection with kidnapping); § 13A-6-45 (interference with custody); §13A-6-61(a)(3) (rape in the first degree); § 13A-6-62(a)(1) (rape in the second degree); § 13A-6-63(a)(3) (sodomy in the first degree); § 13A-6-64(a)(1) (sodomy in the second degree); § 13A-6-66(a)(3) (sexual abuse in the first degree); §13A-6-67(a)(2) (sexual abuse in the second degree); § 13A-6-69
(enticing child to enter vehicle, house, etc., for immoral purposes); § 13A-6-70(c)(1) (providing that a person is deemed incapable of consent to certain sexual offenses if that person is less than 16 years old); § 13A-11-76 (prohibiting the delivery of a pistol to a minor); § 13A-12-111(a)(2) *Page 1073 
(promoting prostitution in the first degree); §13A-12-112(a)(2) (promoting prostitution in second degree); §13A-12-191 (prohibiting the dissemination or public display of obscene matter containing visual reproduction of persons under 17 years of age involved in obscene acts); § 13A-12-192
(prohibiting the possession of obscene matter containing visual reproduction of persons under 17 years of age involved in obscene acts); § 13A-12-196 (prohibiting parents or guardians from permitting children to engage in production of obscene matter); § 13A-12-197 (prohibiting the production of obscene matter depicting persons under 17 years of age involved in obscene acts); § 13A-13-3 (incest); § 13A-13-4 (nonsupport); §13A-13-5 (abandonment of a child); § 13A-13-6 (endangering the welfare of a child); § 13A-12-200.1(16) (defining the term "harmful to minors" in connection with Alabama's Anti-Obscenity Enforcement Act); § 13A-12-200.5 (prohibiting the distribution of material harmful to minors); § 13A-12-215 (prohibiting the sale, furnishing, etc., of controlled substances by persons over age 18 to persons under age 18); and § 13A-12-250
(providing for an additional penalty for the unlawful sale of a controlled substance on or near school campus).
The child-murder provision is not arbitrary and does not violate any equal protection right.
 " 'The Equal Protection Clause of the Fourteenth Amendment goes no further than to prohibit invidious discrimination. . . . If there is some reasonable basis for the recognition of separate classes, and if the disparate treatment of the classes has a rational relation to the object sought to be achieved by the lawmakers, the Constitution is not offended. The transgression arises only when the classification rests upon grounds wholly irrelevant to achievement of the State's objective; the separate treatment must admit of but one conclusion beyond a rational doubt, i.e., that the basis therefore is arbitrary and unreasonable and without relevance to the legislative goal.' "
Goodson v. State, 588 So.2d 509, 514 (Ala.Cr.App. 1991) (quotingState v. Thompson, 133 N.J. Super. 180, 336 A.2d 11, 14 (1975)). " 'Because the statute does not proscribe activities that are legally protected and does not involve any legally cognizable "suspect" class, "the classification must be upheld if 'any state of facts rationally justifying it is demonstrated to or perceived by the court.' " United States v. Holland,810 F.2d 1215, 1219 (D.C. Cir.), cert. denied, 481 U.S. 1057,107 S.Ct. 2199, 95 L.Ed.2d 854 (1987).' " Hardy v. State, 576 So.2d 685,686 (Ala.Cr.App. 1991) (" 'The legislature of Alabama "wanted to lessen the risk that drugs would be readily available to school children. It is surely rational to achieve that goal by increasing penalties for those who sell drugs near schools." ' "). Here, the classification adopted by the Legislature of child-murder as a capital offense is not arbitrary and capricious, but reasonable and appropriate.
Based upon all of these considerations, we hold that §13A-5-40(a)(15) is not arbitrary. See generally Plitt v.Griggs, 585 So.2d 1317, 1324 (Ala. 1991).
It is the holding of this Court that Ala. Code 1975, §13A-5-40(a)(15) is not unconstitutional. The petition for writ of mandamus is denied.
PETITION DENIED.
All Judges concur.
[1] James Johnson, Jr., and Susan Amelia Woodard (the petitioner), were separately indicted for capital offenses under Ala. Code 1975, § 13A-5-40(a)(15). Each offense is separate and involves a different victim. Each defendant filed a motion to dismiss the indictment, challenging the constitutionality of §13A-5-40(a)(15). The circuit court consolidated the cases "for the singular purpose of ruling on these motions." Order of the circuit court, August 3, 1993, at 1.