[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1364 
James Kenneth May was convicted of capital murder in connection with the shooting death of Gary Dewayne Marcum while Marcum was in a vehicle. § 13A-5-40(a)(17), Ala. Code 1975. He was sentenced to life imprisonment without the possibility of parole. May raises 13 issues on appeal.
 I.
May argues that § 13A-5-40(a)(17), Ala. Code 1975, which makes murder committed by use of a deadly weapon while the victim is in a vehicle a capital crime, violates his right to equal protection. He alleges that § 13A-5-40(a)(17) is unconstitutional because it effectively denies him the possibility of parole while others whose victims were not in vehicles are eligible for parole. We find this argument without merit.
 " 'The essence of the theory of equal protection of the laws is that all similarly situated are treated alike.' City of Birmingham v. Stacy Williams Co., Inc., 356 So.2d 608, 611 (Ala. 1978). . . . Equal protection of the laws does not *Page 1365 
compel uniformity in the face of difference. Hadnott v. City of Prattville, 309 F. Supp. 967
(N.D. Ala. 1970). The Equal Protection Clause does not mean that a state may not draw lines that treat one class of individuals differently from the others. The test is whether the difference in treatment is an invidious discrimination. Lehnhausen v. Lake Shore Auto Parts Co., 410 U.S. 356, 93 S.Ct. 1001, 35 L.Ed.2d 351 (1973). Classification of subjects in a statute is not arbitrary and invalid if based on some difference which bears a reasonable and just relation to the attempted classification. Board of Com'rs of City of Mobile v. Orr, 181 Ala. 308, 61 So. 920 (1913)."
State v. Spurlock, 393 So.2d 1052, 1056 (Ala.Cr.App. 1981).
 " 'The Equal Protection Clause of the Fourteenth Amendment goes no further than to prohibit invidious discrimination. . . . If there is some reasonable basis for the recognition of separate classes, and if the disparate treatment of the classes has a rational relation to the object sought to be achieved by the lawmakers, the Constitution is not offended. The transgression arises only when the classification rests upon grounds wholly irrelevant to achievement of the State's objective; the separate treatment must admit of but one conclusion beyond a rational doubt, i.e., that the basis therefore is arbitrary and unreasonable and without relevance to the legislative goal.' "
Goodson v. State, 588 So.2d 509, 514 (Ala.Cr.App. 1991) (quotingState v. Thompson, 133 N.J. Super. 180, 336 A.2d 11,14 (1975)).
The only act made capital by § 13A-5-40(a)(17), Ala. Code 1975, is the intentional murder of a person in a vehicle. "Murder is not a constitutionally protected activity." Ex parteWoodard, 631 So.2d 1065, 1068 (Ala.Cr.App. 1993), cert. denied,662 So.2d 929 (Ala.), cert. denied, 513 U.S. 869,115 S.Ct. 190, 130 L.Ed.2d 123 (1994). Even so, there is a rational basis for the legislature's recognition of killers whose victims are killed while in a vehicle as a separate class, and making that offense punishable by either life imprisonment or the death penalty. The facts in the instant case serve well to demonstrate one rational basis which the legislature could have considered in enacting the statute. Marcum, suffering a mortal wound, attempted to drive from the scene of the shooting. He lost control of the car and crashed into other vehicles parked nearby. Fortunately, no one else was injured by the runaway vehicle in this instance.
Here, the classification by the legislature of the killer of a person in a vehicle as one guilty of a capital offense has a rational basis. The statute additionally does not proscribe any legally protected activities and does not involve any legally cognizable "suspect" class. See Ex parte Woodard, 631 So.2d at 1073.
It is the holding of this Court that § 13A-5-40(a)(17) is constitutional.
 II.
May argues that the trial court's order, which sentenced him to life imprisonment and additionally provides that he can not be paroled, violates the separation of powers doctrine of the Alabama Constitution, he says, because the trial court, effectively, has made a determination as to his parole. May's argument is based on the incorrect assumption that the executive branch alone is empowered by § 124, Constitution of Alabama 1901, to enter orders relating to pardons and paroles. This section was amended in 1939 by Amendment No. 38, which provides the legislature with the power to provide for pardons and paroles. Swift v. Esdale, 293 Ala. 520, 306 So.2d 268
(1975). Section 13A-5-40(a)(17), Ala. Code 1975, enacted by the legislature, gave the trial court the authority to sentence May to life imprisonment without parole. Therefore, we find this to be argument to be without merit.
 III.
May argues that the trial court erred in denying his request for additional funds to hire an expert — a statistician to assist in challenging the jury venire. May alleged at trial that the venire from which his jury was selected did not represent a fair cross-section of the community, because, he says, young *Page 1366 
black males were underrepresented. He argues that he was entitled to funds to hire a statistician to prove that the percentage of young black males on the venire was disproportionately low. The trial court denied his request after finding that young black males were not a distinctive group for purposes of a fair cross-section challenge. May did not make a threshold showing that there was a reasonable probability that the statistical expert would be of assistance to his fair cross-section challenge; thus, his request for an expert was properly denied.
This Court has previously addressed the showing a defendant must make to receive court-ordered funds for a nonpsychiatric expert for the defense:
 "The United States Supreme Court, in Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), held that an indigent defendant is entitled to the assistance of a competent psychiatrist when the defendant's sanity at the time of the offense is a significant factor at trial. In Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), the United States Supreme Court found no need to determine what kind of showing a defendant would have to make to be entitled to the assistance of an expert if the defendant offered nothing more than mere assertions that the requested experts would have been beneficial to his or her defense. The Alabama Supreme Court has interpreted Ake and Caldwell, taken together, to 'hold that a defendant, to be entitled to funds to pay for an expert, must show more than a mere possibility of assistance from an expert.' Dubose v. State, 662 So.2d 1189, 1192
(Ala. 1995). '[A] fair reading of [Ake and Caldwell] is that a defendant must show the trial court that there exists a reasonable probability both that an expert would be of assistance to the defense and that denial of expert assistance would result in a fundamentally unfair trial.' Dubose v. State, 662 So.2d 1156, 1182 (Ala.Cr.App. 1993), aff'd, 662 So.2d 1189 (Ala. 1995) quoting Moore v. Kemp, 809 F.2d 702, 712 (11th Cir.), cert. denied, 481 U.S. 1054, 107 S.Ct. 2192, 95 L.Ed.2d 847 (1987). The appellate courts of this state have upheld the denial of a jury selection expert. See Duren v. State, 507 So.2d 111, 119 (Ala.Cr.App. 1986), aff'd, 507 So.2d 121 (Ala. 1987), cert. denied, 484 U.S. 905, 108 S.Ct. 249, 98 L.Ed.2d 206 (1987)."
MacEwan v. State, 701 So.2d 66 (Ala.Cr.App.), cert. denied,701 So.2d 66 (Ala. 1997).
May's request was supported solely by his assertion that the venire was not a fair cross-section of the community. However, since May only asserted that there was a variance between the percentage of young black males on the venire and the percentage in the community and the trial court determined that young black males were not a distinctive group for fair cross-section purposes, May failed to make any showing that the assistance of a statistical expert was necessary.
 "In order to establish a prima facie violation of the fair cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury selection process."
Duren v. Missouri, 439 U.S. 357, 364, 99 S.Ct. 664, 668,58 L.Ed.2d 579 (1979).
This Court has held that distinctions based on age are not sufficient to establish a violation of an accused's right to a fair cross-section on the jury venire. See Aultman v. State,621 So.2d 353 (Ala.Cr.App. 1992), cert. denied, 510 U.S. 954,114 S.Ct. 407, 126 L.Ed.2d 354 (1993) (holding that young adults of university-student age and particularly those under the age of 21 were not a distinctive group); Rutledge v. State,482 So.2d 1250 (Ala.Cr.App. 1983), rev'd on other grounds482 So.2d 1262 (Ala. 1984) (holding that young persons 19 to 24 years old who were Alabama residents and Auburn University students were not a distinctive group). Additionally, May had not shown any systematic exclusion of black males in the selection process. *Page 1367 
The court did not err in denying May's request for additional funds for a statistician because it had already found that he had failed to demonstrate a violation of the fair cross-section requirement. There was no reasonable probability that the statistician would have affected the outcome of May's venire challenge.
The trial court did not err in denying May's request for a statistical expert.
 IV.
May argues that the trial court improperly allowed allegedly irrelevant and prejudicial questions to be included on the questionnaire. We find this argument to be without merit.
During pre-trial proceedings, May objected to certain questions submitted by the State to be included on the jury questionnaire — namely those questions that sought to elicit the potential jurors' beliefs concerning capital punishment and the defense of insanity. Although the trial court ruled that some questions relating to the insanity defense would not be included on the questionnaire, it allowed others. Additionally, the questions relating to capital punishment were allowed. May argues that because there were no statutory aggravating factors before trial that would render him eligible for a death sentence, and because, he says, he did not intend to use the defense of insanity at trial, the questions allowed by the trial court were irrelevant. May further argues that the trial court's inclusion of these questions on the jury questionnaire was error because they improperly injected these issues into the minds of the potential jurors.
The courts of this state have referred to the use of questionnaires to gather information about potential jurors as "paper voir dire." See Ex parte Bruner, 681 So.2d 173, 190
(Ala. 1996)(Maddox, J., concurring in result). This Court has held that the nature, variety, and extent of voir dire questioning is a matter within the sound discretion of the trial court, and this Court will not reverse the trial court's decision on this matter unless there has been an abuse of discretion. Dawkins v. State, 455 So.2d 220 (Ala.Cr.App. 1984).
May was indicted for capital murder. Although at the time of the hearing, there were no apparent aggravating factors for which the death sentence could be imposed, the jurors' opinions on the death penalty were certainly relevant for purposes of jury selection. The trial court acknowledged that there appeared to be no aggravating circumstances at the time of the pre-trial hearing, but it allowed the questions both because the evidence presented at trial could introduce aggravating circumstances into May's trial and because the jurors' opinions about the death penalty could give both sides some valuable information about the jurors' beliefs, which would aid in jury selection.
The only questions that related to the insanity defense asked essentially whether the potential jurors had had any experiences with a psychiatrist, psychologist, or counselor or were familiar with these fields of study; the questionnaire asked the potential jurors' opinion of the fields of psychiatry and psychology and asked a hypothetical question regarding the potential jurors' opinion of the defense of insanity in a death penalty case. The most specific questions regarding the jurors' opinion of the defense of insanity (i.e., "With regard to the insanity defense: a) would you favor abolishing it? b) do you think it has a valid place in our legal system?") were not allowed by the trial court.
The trial court refused to allow May to waive the defense of insanity in exchange for omitting the questions regarding the insanity defense. The trial court allowed the questions relating to insanity because the death penalty could not be ruled out as a sentencing option before the evidence was presented. Two of the seven statutory mitigating factors to be considered in capital crimes, listed in § 13A-5-51, Ala. Code 1975, relate directly to the mental state of the defendant at the time the crime was committed. Evidence of mental state can also establish nonstatutory mitigating factors. § 13A-5-52
Ala. Code 1975.
The trial court did not abuse its discretion in allowing questions relating to the insanity defense and to the death penalty to be propounded in the juror questionnaire. *Page 1368 
 V.
May alleges that the trial court erred in excusing two jurors from the venire. We find his arguments without merit.
 A.
May argues that the trial court erred in disqualifying veniremember D.A. because he could not read or write. D.A. explained to the court that he could read at only a second-grade level and expressed concern about being able to read exhibits offered at trial. At trial, May's defense counsel requested a determination of fact regarding D.A.'s illiteracy for purposes of challenging the constitutionality of his disqualification pursuant to § 12-16-60(a)(2), Ala. Code 1975, "just so that I can preserve the constitutional question" of excusing jurors based on illiteracy. May made no objection or offer of proof to the effect that D.A. could, in fact, read and write the English language. "The statement of specific grounds of objection waives all grounds not specified and the trial court will not be put in error on grounds not assigned at trial." Jackson v. State, 593 So.2d 167 (Ala.Cr.App. 1991). Additionally, "[a] defendant is bound by the grounds of objection he stated at trial and may not expand those grounds on appeal." Cole v. State, 548 So.2d 1093 (Ala.Cr.App. 1989). May's argument is not preserved with regard to any aspect other than the constitutionality of disqualifying potential jurors because of illiteracy.
May's constitutional challenge to § 12-16-60(a)(2) is without merit. In order to be qualified for service, Alabama jurors must be able to read, speak, understand, and follow instructions in the English language. The federal statute,28 U.S.C. § 1865, which contains virtually identical requirements for jury service has been upheld against constitutional challenges. See United States v. Wilson, 158 F. Supp. 442
(M.D.Ala.), aff'd, 255 F.2d 686 (5th Cir.), cert. denied358 U.S. 865, 79 S.Ct. 97, 3 L.Ed.2d 98 (1958). May's constitutional rights were not violated by the disqualification of veniremember D.A.
 B.
May argues that the trial court erred when it failed to require the attendance of veniremember A.S. We find this argument without merit.
The record indicates that A.S. was on the venire list but was not present at a roll call held at 11:00 a.m., when voir dire began. A.S. later appeared in the clerk's office and was told to go to the courtroom. However, A.S. was never present during voir dire. May's defense counsel requested upon conclusion of voir dire at approximately 2:40 p.m. that the court compel A.S.'s attendance The trial court then stated that it would not delay the proceedings to find a veniremember who failed to appear. The trial court properly exercised its discretion in refusing to compel the attendance of a veniremember who failed to appear in court after being instructed to do so. The voir dire of the veniremembers who were present took approximately four hours. The trial court committed no error in refusing to delay proceedings for the purposes of locating A.S. and then further delay proceedings in order to reconduct voir dire solely with regard to A.S.
 VI.
May argues that the trial court erred in denying his request for access to the Tuscaloosa Police Department's "gang suppression list", which contains the street names and gang affiliations of gang members in the county who are known to the police. We find this argument without merit.
Before trial, May filed a motion to produce the police department's record of all people with known gang affiliations in Tuscaloosa County. He later filed a subpoena duces tecum seeking the same information. The State and the City of Tuscaloosa moved to quash the subpoena on the grounds that the information was confidential and not discoverable. Testimony at a pre-trial hearing revealed that the list was composed of intelligence information gathered by the Tuscaloosa Police Department from confidential sources and that it was used to facilitate ongoing criminal investigations. Neither May's name nor the victim's name appeared on the list. The trial court ordered that the list be provided for in camera inspection for *Page 1369 
purposes of determining whether the street names of State's witnesses as well as others requested by the defense were on the list. The trial court refused to release any information regarding gang affiliations of anyone on the list because the information could compromise ongoing criminal investigations; however, the trial court agreed to provide May with the street names of individuals testifying at trial for purposes of clarifying their identities.
Rule 16.1(e), Ala. R.Crim. P., states, in part, that the defendant is not entitled to the discovery or inspection of "reports, memoranda, witness lists, or other internal state/municipality documents made by . . . law enforcement agents, in connection with the investigation or prosecution of a case." Additionally, The Alabama Supreme Court has held that "[r]ecorded information received by a public officer in confidence, . . . . pending criminal investigations, and records the disclosure of which would be detrimental to the best interests of the public . . . may not be subject to public disclosure." Stone v. Consolidated Publishing Co.,404 So.2d 678, 681 (Ala. 1981). The question of disclosure or nondisclosure of the identity of a confidential police informant is a matter within the sound discretion of the trial court, and we will not overturn the trial court's decision absent an abuse of that discretion. See Ex parte Pugh,493 So.2d 393, 397 (Ala. 1986).
The gang suppression list was an internal report that the trial court determined contained information that was, in part, confidential and that its disclosure would be against the public's best interest. The trial court committed no error in refusing to allow May access to the confidential information on the list.
 VII.
May argues that he was deprived of a fair trial because, he says, the State failed to produce evidence gathered at the crime scene. Photographs of a bullet fragment and a shell casing were taken at the crime scene. May served upon the State a subpoena duces tecum seeking the production of the bullet fragment and the shell casing at a preliminary hearing and the State was unable to locate the evidence for production. May maintains that the State's failure to produce this evidence was an act of bad faith that requires his conviction to be reversed. We disagree.
The Alabama Supreme Court, in Ex parte Gingo, 605 So.2d 1237
(Ala. 1992), adopted the United States Supreme Court's position in Arizona v. Youngblood, 488 U.S. 51, 109 S.Ct. 333,102 L.Ed.2d 281 (1988), regarding the allegations that the state failed to preserve evidence potentially useful to the defense:
 " '[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.' Youngblood, 488 U.S. at 58, 109 S.Ct. at 337. 'The presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed.' Youngblood, 488 U.S. at 57 (footnote), 109 S.Ct. at 337 (footnote), citing Napue v. Illinois, 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959)."
605 So.2d at 1240-41. Gingo additionally recognized that a defendant's right to due process can be violated when the loss or destruction is of evidence so critical to the defense that its loss or destruction makes the trial fundamentally unfair.Id. (citing Youngblood, 488 U.S. at 67, 109 S.Ct. at 342).
May has failed to establish that the loss or destruction of the bullet fragment and shell casing violated his right to due process under either theory recognized by Alabama law. May's allegation that the evidence was lost or destroyed in bad faith is completely without support in the record. Additionally, May has failed to demonstrate that the evidence was critical to the defense's case. The murder weapon was never recovered by the police. Even had the bullet fragment and the spent shell casing been subjected to ballistics tests, there was no weapon to which a ballistics test could conceivably match them. May's theory that more than one weapon was used at the scene based on evidence of only one shell *Page 1370 
casing and more than one bullet could still be illustrated by the photographs of the crime scene.
May is not entitled to a new trial as a result of the State's failure to produce the bullet fragment and shell casing for ballistics testing.
 VIII.
May argues that his conviction is due to be reversed because, he says, the State violated the requirements of Brady v.Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), when it allegedly failed to disclose the name of a witness to the killing until the day of trial. We disagree.
In order to establish a Brady violation, May must show: (1) that the prosecution suppressed evidence; (2) that the evidence was favorable to him or that it was exculpatory; and (3) that the evidence was material to the issues at trial. Johnson v.State, 612 So.2d 1288, 1293 (Ala.Cr.App. 1993).
May's argument is based on the statement of Bernard Byrd, which was given to an investigator for the State on the morning of the first day of May's trial. Testimony taken during a hearing on May's motion for a new trial revealed that the State was contacted on the morning of the first day of trial and given information that Byrd had witnessed the killing. An investigator was dispatched to interview Byrd. Byrd told the investigator that he saw two individuals around the victim's car just before he heard shots, but that he could not see the face of either person he believed may have been responsible for the murder. Testimony revealed that the State immediately revealed to the defense all information gathered from the interview.
May's Brady argument is based on Byrd's testimony that he was questioned by two police officers shortly after the shooting and that the statements he made at that time were never disclosed to the defense. Byrd testified at the hearing that he told the officers that he heard a shot, but he could not tell the police who fired it or exactly what had happened. (S.R. 14.) There was no evidence presented at the hearing that a report was made after Byrd talked to the policemen or that the law enforcement officers knew before trial that Byrd was present at the scene of the killing.
May has failed to establish any of the three prerequisites for finding a Brady violation. He has failed to show that the State suppressed any information concerning Byrd. The State made Byrd's statement available to the defense as soon as it was received. Additionally, Byrd's statement did not contain evidence that was favorable or exculpatory to May. Byrd testified that he did not see who fired the shot that killed Marcum. He also testified that he was unable to tell who was standing around Marcum's car before he heard gunfire. There was nothing in Byrd's statement that either added to or took away from evidence already known to May and the State regarding the identity of Marcum's killer. Finally, the information contained in Byrd's statement was immaterial — there was no reasonable probability that, had the evidence been disclosed to the defense, the result of the trial would have been different. SeeJohnson v. State, 612 So.2d at 1293.
May has failed to show that the State failed to disclose information regarding Byrd to the defense in violation ofBrady. The trial court properly denied May's motion for a new trial on this ground.
 IX.
May argues that the trial court erred in denying him access to certain juvenile records of one of the State's witnesses, Melvin Watkins. The trial court denied May access to records of any of Watkins's juvenile and youthful offender adjudications, which occurred before the killing for which May was on trial. The trial court stated that any pending proceedings against Watkins may have been admissible in order to show bias towards the prosecution, but noted that there were no pending proceedings at the time of trial. The trial court determined that the only probative value of Watkins's juvenile and youthful offender records would be impeachment and, thus, that they were inadmissible. *Page 1371 
Rule 609(d), Ala. R. Evid., specifically provides that evidence of juvenile or youthful offender adjudications is not admissible for purposes of impeaching a witness's credibility. When the trial court determined that there were no pending cases in Watkins's juvenile or youthful offender records from which the defense could demonstrate possible bias, impeachment was the only remaining use for those records. The trial court was correct in not allowing the use of Watkins's juvenile record for the sole purpose of impeachment.
The Sixth Amendment right to confront witnesses has been held to outweigh the State's interest in protecting the anonymity of juvenile offenders. See Davis v. Alaska, 415 U.S. 308,94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). However, the Alabama Supreme Court has distinguished efforts at general impeachment using juvenile records from efforts to prove a witness's bias. Ex parte Lynn,477 So.2d 1385, 1386 (Ala. 1985) (holding that a defendant's right to confrontation was not violated by the trial court's refusal to allow a witness's juvenile records to be used for general impeachment purposes while they may be admissible to show a possible bias).
The trial court did not err in denying May access to Watkins's juvenile records after determining that there was no permissible basis for the defense to use them at trial.
 X.
May argues that the trial court erred in denying him access to certain "Crime Stoppers" Information. We find that this argument has not been preserved for our review.
Before trial, May obtained a subpoena duces tecum ordering Crime Stoppers, a nonprofit organization established to obtain, through informants, information about criminal activity, to produce all records relevant to Marcum's killing. The state filed a motion for a protective order concerning the request for the records and the trial court held a hearing. After the hearing and an in camera inspection the trial court released certain Crime Stoppers documents to the defense but withheld others. May never objected to the trial court's decision to withhold certain records from the defense.
We agree with the state's argument that, because May never objected to the trial court's decision not to release certain records to him, his argument on appeal has not been preserved. May has cited no authority in his reply brief to this Court in support of his position that this argument was preserved solely by virtue of his arguments at the hearing on the State's motion for a protective order. "Absent an objection to an alleged error and a ruling by the trial court, there is nothing for this court to review." Thornton v. State, 527 So.2d 143
(Ala.Cr.App. 1987), cert. quashed, 527 So.2d 148 (Ala. 1988). In the instant case, there was neither an objection to the trial court ruling nor a ruling on the objection. Thus, we cannot review this argument on appeal.
 XI.
May argues that the trial court erred in denying his motion for a new trial, stating as a ground that his conviction was obtained largely due to the alleged perjured testimony of State's witness Melvin Watkins's testimony.
The Alabama Supreme Court, in Ex parte Frazier, 562 So.2d 560
(Ala. 1989), set out the prerequisites for granting a motion for new trial in a non-death penalty case based on perjured testimony given at trial.
 "In order to grant a motion for a new trial alleging perjured testimony, the trial court must be reasonably well satisfied (1) that testimony given by a witness at trial was false; (2) that there is a significant chance that had the jury heard the truth, it would have reached a different result; (3) that the evidence tending to prove the witness's perjury has been discovered since trial; and (4) that evidence could not have been discovered before or after trial by the exercise of due diligence."
Id., at 569-70. Frazier additionally states that the trial court's ruling on a motion for a new trial alleging perjured testimony is presumed to be correct and will be upheld on appeal unless found to be clearly erroneous. Id. at 570. While it is evident from the record that Watkins gave testimony that implicated *Page 1372 
May in the murder after he had earlier given testimony to the effect that he could not identify the person who shot Marcum, May has failed to meet the burden established inFrazier to warrant a new trial.
The jury heard both versions of Watkins's testimony and was in the best position to determine which version to believe. May was also able to cross-examine Watkins as to both accounts. May has additionally failed to demonstrate that he provided the trial court with any evidence discovered after trial and before filing the motion for a new trial that proves that Watkins's testimony was perjured. He has merely shown that Watkins gave testimony at trial that conflicted with earlier testimony. At trial, Watkins gave two separate accounts of what he witnessed; one account implicated no one in particular and one implicated May. The jury observed his testimony of both accounts; observed May's extensive cross-examination and impeachment of Watkins; and was in the best position to determine which account was truthful.
Based on these facts and the standard under which we must view them, the trial court properly denied May's motion for a new trial based on Watkins's alleged perjured testimony.
 XII.
May argues that the trial court erred in refusing to allow the admission into evidence of a report by state's witness Melvin Watkins's probation officer in order to show Watkins's propensity for drug use. We find May's argument without merit.
May sought to introduce the report to impeach Watkins's credibility as an eyewitness to the murder. However, before May attempted to introduce the probation officer's report, he was able to establish through cross-examination the following: Watkins had in the past been a drug dealer for approximately one year; he had been smoking marijuana on the night he witnessed the murder; and he was on probation and subject to random drug screenings at the time of the murder. After establishing all of these facts through cross-examination, the introduction of the probation officer's report indicating that he had failed drug screenings would have been merely cumulative to what Watkins had already admitted.
Rule 403, Ala. R. Evid., provides that even evidence that is relevant can be properly excluded if it tends to cause undue delay or if it constitutes needless presentation of cumulative evidence.
The trial court did not abuse its discretion in refusing to allow the probation officer's report into evidence.
 XIII.
May argues that the trial court erred in denying his motion for a new trial because the jury's verdict was against the great weight of the evidence presented at trial. May does not allege that the State failed to prove a prima facie case against him. His argument appears to be based largely on allegations that the testimony of one of the State's witnesses was perjured. After concluding that there had been an insufficient showing that the witness's testimony was perjured (see Part XI above), we find his argument without merit.
Once a prima facie case has been submitted to the jury, this Court will not upset the jury's verdict except in extreme situations in which it is clear from the record that the evidence against the accused was so lacking as to make the verdict wrong and unjust. Deutcsh v. State, 610 So.2d 1212,1234-35 (Ala.Cr.App. 1992). This Court will not substitute itself for the jury in determining the weight and probative force of the evidence. Benton v. State, 536 So.2d 162, 165
(Ala.Cr.App. 1988).
May has made no showing that the jury's verdict was overwhelmingly against the evidence or unjust. The trial court did not err in overruling May's motion for a new trial.
 XIV.
May's final argument is that the prosecutor improperly commented on his failure to testify at trial. This argument is not preserved for our review. *Page 1373 
This argument stems from the state's direct examination of Investigator Charles Steele in which Steele was asked what he told May upon his arrest. Steele answered that he read May his Miranda rights. (R. 926-27.) May did not object to the question at trial and argued for the first time in his motion for a new trial that the state's question was improper. When no objection is made following a prosecutor's allegedly improper remark, a claim of error based on improper argument of counsel is not preserved for appellate review. Lee v. State, 562 So.2d 657
(Ala.Cr.App. 1989).
For the above-stated reasons, the judgment of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur.