ON APPLICATION FOR REHEARING
The opinion of this Court issued October 25, 1991, is hereby withdrawn. The following becomes the opinion of the Court.
This is an appeal, pursuant to Rule 17, A.R.Crim.P.Temp. (now Rule 15.7, A.R.Crim.P.), from the pretrial order of the Circuit Court of Shelby County suppressing the results of tests performed by two different environmental management laboratories upon material alleged to constitute hazardous waste.
In November 1988, McRay Gingo and Atlas Industrial Painters, Inc., were separately indicted. Each indictment contained three counts, which charged: 1) illegally disposing of hazardous wastes at an unpermitted site in Walker County, Alabama, in violation of Ala. Code 1975, § 22-30-19(e)(1); 2) unlawfully violating an order issued by the Alabama Department of Environmental Management (ADEM) dated May 28, 1986, which, in effect, required Gingo and Atlas to submit to ADEM a plan for the proper disposal of certain hazardous wastes stored at the Atlas facility in Pelham, Alabama, in violation of Ala. Code 1975, § 22-30-19(e)(6); and 3) unlawfully failing to prepare a hazardous waste manifest for the transportation of the hazardous wastes referred in the second count, in violation of ADEM regulations and Ala. Code 1975, § 22-30-19(e)(6). Robert Dale White was separately charged in a three count indictment with: 1) unlawfully transporting hazardous wastes to an unpermitted site in Walker County, Alabama, in violation of Ala. Code 1975, § 22-30-19(e)(1); 2) unlawfully accepting and transporting hazardous wastes not accompanied by a hazardous waste manifest, in violation of ADEM regulations and Ala. Code 1975, § 22-30-19(e)(6); and 3) unlawfully transporting hazardous waste without having received an Alabama Hazardous Waste Transport permit from ADEM, in violation of Ala. Code 1975, § 22-30-19(e)(6). *Page 1235 
The circuit court granted the appellants' motions for production and disclosure and ordered pretrial discovery pursuant to Rule 18.1, A.R.Crim.P.Temp. (now Rule 16.1, A.R.Crim.P.). When it was discovered that samples of the waste material had been destroyed, the circuit court ordered the suppression of the test results of that material.
The pertinent facts are listed in chronological order:
 November 26, 1986 — Three or four samples of suspected hazardous wastes were collected by ADEM from 50 drums on a vacant lot in Walker County, Alabama, and transported to the ADEM laboratory in Montgomery for analysis. They were received at the laboratory in December of 1986, R. 106, and analyzed on December 12, 1986. R. 120.
January 1987 — ADEM receives test results. R. 102.
 April 23, 1987 — ADEM refers the case to the Alabama attorney general. R. 99.
 April 29 or May 1, 1987 — Samples collected by ADEM disposed of. R. 93, 106.
 August 6, 1987 — Environmental Protection Agency (EPA) collects four samples from a site on Gardner Road in Walker County. These samples were sent to the EPA environmental management laboratory in Athens, Georgia, and were received there on August 7, 1987. These samples were taken to determine if hazardous waste was present at the site. At that time, the EPA was proceeding with the matter as a civil case rather than a criminal one. R. 47. The EPA objective was "to get the [site] cleaned up." R. 72.
 September 25, 1987 — An EPA administrative order dated September 21, 1987 is sent to appellants Gingo and Atlas.
 December 1987 — Pursuant to an administrative order from EPA, appellant Gingo met with EPA representatives in Atlanta, Georgia, to discuss whether he was going to undertake the cleanup. R. 71. This administrative order included the laboratory results and a finding of fact.
 January 1988 — EPA removes the material remaining at the Walker County site after appellant Gingo fails to conduct the cleanup.
 An investigator from the attorney general's office collected samples from the dump site after learning that the "ADEM samples were no longer available." R. 94. Those samples could not be analyzed or "flash point tested" because the waste was not liquid but solid and "had rubberized. [It] had been exposed to the climate for a long period of time." R. 95. Although there was no testimony concerning the date these samples were collected, it must have been before the site was cleared by the EPA.
 November 15, 1988 — Indictments are returned against appellants Gingo and Atlas.
 November 18, 1988 — An indictment is returned against appellant White.
 February 15, 1989 — Appellants Gingo and Atlas file a motion for production and disclosure. This motion specifically requested, among other things, the production of "[a]ny and all tangible evidence in the State's possession, care, custody or control relating to or consisting of . . . paint, hazardous waste, sludge, drums. . . ." CR. 12. The motion also requested "[a]ny and all . . . paint, sludge, hazardous waste, drums . . . possessed or contained in the files of Alabama Department of Environmental Management, Shelby County Sheriff's Department, Walker County Sheriffs Department, Alabama Attorney General's Office. . . ." CR. 15
 February 24, 1989 — Motion granted pursuant to Rule 18.1, A.R.Crim.P.Temp.
 March 9, 1989 — By letter of this date, the Alabama attorney general notified appellant Gingo that the "[s]amples of hazardous waste material previously analyzed by the ADEM laboratory . . . no longer exist." R. 57.
 August 23 or 24, 1989 — EPA issues order to dispose of samples. R. 54, 86.
 October 12, 1990 — Evidentiary hearing held on State's motion for pretrial determination of admissibility of evidence. *Page 1236 
 February 22, 1991 — The circuit court issued an order that "the test results received by the State in this cause shall not be received in evidence." CR. 70. In that order, the court found:
 "4. That samples were taken in which both the Alabama Department of Environmental Management and the Environmental Protection Agency had when the indictments were issued against the said Defendants.
 "5. That since the indictments have been returned and since the Court's aforesaid discovery order dated February 24, 1989 all samples have been destroyed through no fault of any Defendants.
". . . .
 "7. That the destruction of the samples in this cause would only allow test results as evidence against the Defendants and the destruction of the evidence does not allow the Defendants access to any potentially exculpatory material." CR. 69-70.
The Due Process Clause of the Constitution of the United States did not require the suppression of the test results. "[W]hen we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant," the good or bad faith of the State is relevant. Arizona v. Youngblood, 488 U.S. 51,109 S.Ct. 333, 337, 102 L.Ed.2d 281 (1988). "[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." Youngblood, 488 U.S. at 58,109 S.Ct. at 337. "The presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." Youngblood,488 U.S. at 57 n. **, 109 S.Ct. at 337 n. **. See also, UnitedStates v. Galvan-Garcia, 872 F.2d 638, 641 (5th Cir.), cert. denied, 493 U.S. 857, 110 S.Ct. 164, 107 L.Ed.2d 122 (1989). See generally, W. La-Fave and J. Israel, 2 CriminalProcedure § 19.5 (Supp. 991).
The year before Youngblood was decided, the Alabama Supreme Court reached a contrary result in Ex parte Dickerson,517 So.2d 628 (Ala. 987), when it held that "under controllingauthority, the good faith or bad faith of the prosecution is irrelevant." Dickerson, 517 So.2d at 630 (emphasis added). InDickerson, the Court held that the intentional destruction by the police of evidence which might have been favorable to the defendant "substantially impaired the defendant's ability to establish the favorable nature of the evidence and violated the defendant's right to due process." 517 So.2d at 631.
However, the "controlling authority" cited inDickerson was all federal case authority. The only state case cited was Kennedy v. State, 472 So.2d 1106 (Ala.), cert. denied, 474 U.S. 975, 106 S.Ct. 340, 88 L.Ed.2d 325 (1985), which also relied only on federal case authority.
This Court conscientiously honors the statutory command that "[t]he decisions of the supreme court shall govern the holdings and decisions of the courts of appeals." Ala. Code 1975, §12-3-16. See Hampton v. State, 455 So.2d 149, 152
(Ala.Cr.App. 984). However, as was recognized in Minniefield v.State, 47 Ala. App. 699, 705, 260 So.2d 607 (1972): "At all events we are bound by the opinions of the Supreme Court of Alabama even on Federal questions unless the Supreme Court of the United States expressly or by necessary implication has ruled to the contrary." We conclude that Youngblood overruledDickerson by necessary implication.[1]
We further hold that under the principles ofYoungblood, the destruction of the test samples and the waste material located at *Page 1237 
the dump site did not deny the defendants due process of law because those defendants have failed to show any "bad faith" on the part of the prosecution. All of the evidence was destroyed according to standard procedure. Furthermore, there is only the vaguest of speculation to support the contention that athird test of the waste material might prove that it was non-hazardous. It must be remembered that the waste material was independently collected and tested by two different laboratories — one federal and one state. There has not even been the contention that there was any conflict or discrepancy between the test results.
With regard to the results of the test conducted by the EPA, it must be observed that while it could be argued that the State had possession of the dump site from which the samples were taken by the EPA, the State did not have control over the samples taken by the EPA or over the results of the test conducted by the EPA. "Materials not possessed by the government cannot be suppressed within the meaning ofBrady [v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215
(1963)]." United States v. Rodriguez, 917 F.2d 1286, 1291 (11th Cir. 990), affirmed on rehearing as to this ground and vacated in part on other grounds, 935 F.2d 194 (11th Cir. 991).
The order of the circuit court dated February 22, 1991, suppressing the results of chemical tests of suspected hazardous waste material is reversed. This cause is remanded for further proceedings not inconsistent with this opinion.
APPELLEE'S APPLICATION FOR REHEARING OVERRULED; MOTION DENIED; STATE'S APPLICATION FOR REHEARING GRANTED; ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED; REVERSED AND REMANDED.
All Judges concur.
[1] It does appear that in Duncan v. State, 575 So.2d 1198, 1204
(Ala.Cr.App. 990), cert. denied, 575 So.2d 1208 (Ala. 991), this Court erroneously assumed that Youngblood and Dickerson
were consistent. However, because Duncan is presently on remand to the trial court after and pending direct appellate review by this Court, we will not reexamine on this occasion the conclusion reached there.