We granted certiorari review in this case to determine whether the State erred in destroying or allowing the destruction of samples of allegedly hazardous waste.
On November 26, 1986, four officials of the Alabama Department of Environmental Management ("ADEM") obtained three or four pints of waste from fifty 55-gallon drums in Walker County. In December of 1986, the samples were tested and found to be hazardous waste because of the characteristic of "ignitability" as defined by ADEM regulations. On April 23, 1987, the director of ADEM notified the attorney general's office of the findings and requested that that office conduct an investigation into to the dumping of allegedly hazardous waste in Walker County. The samples were then disposed of on April 29, 1987, or May 1, 1987. Although the ADEM laboratory director knew that the samples were related to a possible criminal case, he disposed of the samples, because ADEM had no standard operating procedure for keeping evidence in criminal cases. (R.T. 28-29). We note that this was only the second case that ADEM had submitted to the attorney general's office. Since then, ADEM has established a procedure for maintaining samples related to a criminal case.
On August 5, 1987, ADEM notified the Environmental Protection Agency ("EPA") of the dumping of alleged hazardous waste. The purpose of the EPA's involvement was to remove any hazardous waste and to identify the responsible parties in order to hold them civilly liable for the costs of the removal. The EPA collected samples from the drums and determined that the samples were hazardous because of the characteristic of "ignitability" as defined by EPA regulations. On September 25, 1987, the EPA sent the defendants an administrative order and in December 1987, the defendants met with an EPA official concerning the EPA's findings. On August 23 or 24, 1989, the EPA destroyed the samples, in accordance with its standard procedure in civil cases. An EPA official stated that it was standard procedure to retain samples collected in the course of an EPA criminal investigation. The official stated that although she knew of an ongoing state investigation, she did not know whether it was civil or criminal in nature and that the State had not requested that the EPA keep the samples. (R.T. 69, 53). She also stated that had the EPA known of the trial court's discovery order, the samples would not have been destroyed. (R.T. 63).
At some point, the attorney general's office took samples of the waste, but the waste had solidified and the samples could not be tested.
Two of the defendants, McRay Gingo and Atlas Industrial Painters, Inc., were indicted and charged with: (1) disposing of hazardous waste at an unpermitted site in Walker County, in violation of § 22-30-19(e)(1), *Page 1239 
Ala. Code 1975; (2) violating an order issued by ADEM requiring that the defendants submit a plan to ADEM for the proper disposal of certain hazardous wastes, in violation of §22-30-19(e)(6), Ala. Code 1975; and (3) failing to prepare a hazardous waste manifest for the transportation of certain hazardous waste, in violation of ADEM regulations and §22-30-19(e)(6), Ala. Code 1975.
The other defendant, Robert Dale White, was separately charged with: (1) transporting hazardous wastes to an unpermitted site in Walker County, Alabama, in violation of § 22-30-19(e)(1), Ala. Code 1975; (2) accepting and transporting hazardous wastes not accompanied by a hazardous waste manifest, in violation of ADEM regulations and § 22-30-19(e)(6), Ala. Code 1975; and (3) transporting hazardous waste without having an Alabama hazardous waste transport permit from ADEM, in violation of § 22-30-19(e)(6), Ala. Code 1975.
On February 15, 1989, the defendants filed a motion for production and disclosure of all Brady v. Maryland,373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), material and evidence discoverable pursuant to Rule 18, A.R.Crim.P.Temp. Specifically, the defendants requested production of "any and all tangible evidence in the State's possession, care, custody or control relating to or consisting of . . . paint, hazardous waste, sludge, drums." (C.R. 3.) The trial court granted the motion, pursuant to Rule 18.1, A.R.Crim.P.Temp. On March 9, 1989, the State notified the defendants that all of the samples had been destroyed. The State then filed a motion for a pretrial determination of the admissibility of evidence regarding the EPA and ADEM test results relating to the samples, for the purpose of using the test results at trial. (C.R. 23-25). After a hearing, the trial court suppressed evidence of the test results. In its order, the trial court stated, in pertinent part, as follows:
 "That two Defendants, namely, McRay Gingo and Atlas Industrial Painters, Inc., were indicted on November 18, 1988. Said Defendants employed the Honorable Frank Head as their attorney who filed a Motion for Production and Disclosure on February 15, 1989 which was granted pursuant to Rule 18.1 of A.R.C.P. on February 24, 1989. Said motion sought discovery of all scientific tests or experiments made by the State, as well as any and all tangible evidence in the State's possession, care, custody or control relating to hazardous waste, sludge, drums or objects or other tangible things relevant to the case against said Defendants, and also discovery of any Brady material.
". . . .
 "That samples were taken . . . which both the Alabama Department of Environmental Management and the Environmental Protection Agency had when the indictments were issued against the said Defendants.
 "That since the indictments have been returned and since the Court's aforesaid discovery order dated February 24, 1989, all samples have been destroyed through no fault of any Defendants.
 "The State in its brief to the Court cited Reed v. State, 401 So.2d 131, 135, for the proposition that test results are in and of themselves sufficient to make out a prima facie case, without the admission of samples on which the tests were conducted. However, this Court notes that the testimony of the State Toxicologist went in without objection and [that] as a result thereof, our [Court of Criminal Appeals] held that a prima facie case was made.
 "The destruction of the samples in this cause would only allow test results as evidence against the Defendants and the destruction of the evidence does not allow the Defendants access to any potentially exculpatory material."
(C.R. 69-70.)
On appeal, the Court of Criminal Appeals reversed the trial court's order suppressing evidence of the test results. That court stated:
 " '[W]hen we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated *Page 1240 
the defendant,' the good or bad faith of the State is relevant. Arizona v. Youngblood, 488 U.S. 51, 109 S.Ct. 333, 337, 102 L.Ed.2d 281 (1988). '[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.' Youngblood, 488 U.S. at 58, 109 S.Ct. at 337."
State v. Gingo, 605 So.2d 1233, 1236 (Ala.Crim.App. 991). The court stated, in regard to the samples, that "all of the evidence was destroyed according to standard procedure." 605 So.2d at 1237. The court also found that the State did not have "control" over the samples taken by the EPA and held, therefore, that the results of tests on those samples would not be subject to suppression under the terms of Brady v. Maryland,373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
We disagree with the Court of Criminal Appeals, because we conclude that the trial court correctly suppressed the evidence of the test results relating to the destroyed samples, under the facts of this case. The facts of this case are substantially different from those in Youngblood, cited by the Court of Criminal Appeals. In Youngblood, a 10-year-old boy was molested and sodomized. The police failed to refrigerate the boy's clothing, which had two semen stains on it. The police did refrigerate a "sexual assault kit," which contained a swab of semen from the boy's rectum. However, there was not enough semen present on the swab for accurate tests. At trial, the State presented evidence that the boy had identified the defendant as his attacker. The State did not introduce any evidence of the assault kit or the clothing in its case-in-chief. An expert for the defendant testified that the defendant may have been completely exonerated by tests on the clothing if the clothing had been refrigerated. The Supreme Court held that to show a due process violation, the defendant must show bad faith on the part of the police in failing to preserve the potentially exculpatory evidence.
In Youngblood, the Supreme Court cited California v.Trombetta, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984), which involved a drunk driving prosecution:
 "The defendants sought to suppress the test results [indicating the concentration of alcohol in the defendants' blood] on the ground that the State had failed to preserve the breath samples used in the test. We rejected this argument for several reasons: first, 'the officers here were acting in 'good faith and in accord with their normal practice,' [Trombetta] at 488, 104 S.Ct. at 2533, quoting Killian v. United States, 368 U.S. 231, 242, 82 S.Ct. 302, 308, 7 L.Ed.2d 256 (1961); second, in the light of the procedures actually used the chances that preserved samples would have exculpated the defendants were slim, 467 U.S., at 489, 104 S.Ct., at 2534; and third, even if the samples might have shown inaccuracy in the tests, the defendants had 'alternative means of demonstrating their innocence.' Id., at 490, 104 S.Ct., at 2534."
Youngblood, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988).
In the instant case, there is no evidence available to refute the test results, because the samples have been destroyed. The evidence necessary to convict the defendants of hazardous waste violations is the test results. The test results were part of the State's case-in-chief, i.e., the State had to use those test results to carry its burden of proving the hazardous waste violations. In Trombetta, the police destroyed the breath samples according to a standard procedure. In the case at bar, there was no procedure for keeping the samples. In Trombetta, both defendants were stopped on a suspicion of drunk driving and then were given the breath test. In the case at bar, the defendants were indicted solely because of the tests done on the samples.
"[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law."Youngblood, 488 U.S. at 58, 109 S.Ct. at 337. "The presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn *Page 1241 
on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed."Youngblood, 488 U.S. at 57 (footnote), 109 S.Ct. at 337
(footnote), citing Napue v. Illinois, 360 U.S. 264, 269,79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959).
Although to show bad faith, for the purpose of showing a due process violation, the defendant must show that the State had knowledge of the exculpatory value of the destroyed evidence, "there may well be cases in which the defendant is unable to prove that the State acted in bad faith but in which the loss or destruction of evidence is nonetheless so critical to the defense as to make a criminal trial fundamentally unfair."Youngblood, 488 U.S. at 67, 109 S.Ct. at 342 (Stevens, J., concurring in the result). We think that this is such a case.
The State, on April 23, 1987, had knowledge of the results of ADEM's tests on the samples. A week later, ADEM's samples were destroyed. ADEM had no standard operating procedure for "what to do with evidence obtained in criminal cases." (R.T. 28-29). ADEM notified the EPA of the waste on August 5, 1987, and on August 6, 1987, the EPA took samples of the waste. On February 15, 1989, the defendants filed a motion for production and disclosure, which was granted on February 24, 1989. On March 9, 1989, the State informed the defendants that the samples no longer existed. On August 23 or 24, 1989, six months after the discovery order had been entered, the EPA destroyed its samples. Although the EPA normally kept samples that were involved in a criminal case, EPA was not informed that these particular samples related to a criminal case. The Court of Criminal Appeals determined that the State did not have control over the samples taken by the EPA. However, the State was planning to use the EPA test results against the defendants at trial. Under the facts of this case, we think that it would be fundamentally unfair to allow the State to use the results of the EPA or ADEM tests on the destroyed samples.
REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, SHORES, ADAMS, STEAGALL and INGRAM, JJ., concur.