Demetreus Seawright was arrested and charged with one count of unlawful distribution of a controlled substance (cocaine), a violation of § 13A-12-211, Ala. Code 1975. As a result of an alleged discovery violation by the State, the circuit court dismissed the indictment against Seawright. Pursuant to Rule 15.7, Ala. R.Crim.P., the State appeals the circuit court's judgment dismissing Seawright's indictment.
The record indicates that during a motion hearing held on January 11, 2006, the following occurred:
 "MS. COOK [defense counsel]: We'd like to make a motion. The State has listed a video and audiotape that could be exculpatory in nature.
 "THE COURT: Was there a video and audiotape?
 "MR. DEAN [prosecutor]: My understanding from the police department is that they have been unable to find it.
 "THE COURT: I'll put it at the end of the docket to make a ruling on it.
 ". . . .
 "THE COURT: This is Demetreus Seawright. The defense announced ready. I understand they made a request *Page 189 
for discovery. There was a video and audiotape that you — Tell me what happened.
 "MS. COOK: Well, Judge, there was a video and audiotape of this alleged buy involving my client. This video and audiotape has either been destroyed or the police don't know where it's at. It could be exculpatory in nature. It could be somebody else other than my client. I think it's essential to my case.
 "THE COURT: You made a demand for the discovery?
 "MS. COOK: Yes.
 "THE COURT: Y'all had the tape?
 "MR. DEAN: Judge, we never had the tape. The police department had the tape. They have listed the tape. However, the State does have the confidential informant. He's available right now in Ventress [Correctional Facility]. He's not here today, but he is available to testify that he bought the drugs from Mr. Seawright.
 "THE COURT: You want to present to the jury that, yes, we list the tape; sloppy police work?
 "MR. DEAN: Well, that's a question for the jury.
 "THE COURT: He has a right to whatever evidence that was compiled by the police department. If the tape wasn't — if there was an audiotape, and then they demand to see that tape, then there would be — they made a demand for that discovery, and that evidence has been lost, and it's evidence that could be exculpatory. I'm going to dismiss the case.
 "MR. DEAN: I would say I wasn't going to use the tape at trial. I'm not going to use it.
 "THE COURT: But the point is, they requested it for their case; it could be exculpatory. The Court dismisses the case.
 "MR. DEAN: The State does object for the record. The State gives oral notice of its intent to appeal.
 "THE COURT: All right. Take him out."
(R. 2-4.)
Seawright's case involves only issues of law and the application of the law to the undisputed facts. Thus, our review is de novo. See, e.g., Ex parte Key, 890 So.2d 1056, 1059
(Ala. 2003); State v. Hill, 690 So.2d 1201, 1203-04
(Ala. 1996); State v. Otwett, 733 So.2d 950, 952
(Ala.Crim.App. 1999).
In Alabama, discovery in a criminal case is governed by Rule 16, Ala. R.Crim.P. Rule 16.5, Ala.R.Crim.P., "places the remedy for [discovery] violations within the sound discretion of the trial court." Smith v. State, 698 So.2d 189, 206-07
(Ala.Crim.App. 1996), aff'd, 698 So.2d 219 (Ala. 1997). As this Court stated in Hardy v. State, 804 So.2d 247
(Ala.Crim.App. 1999), aff'd, 804 So.2d 298 (Ala. 2001):
 "Rule 16.5[, Ala.R.Crim.P.,] gives the trial court a range of sanctions that may be imposed in the event of noncompliance with the court's discovery order. The rules allow for the admission of probative evidence while ensuring that the opposing party has adequate time to review the evidence. Among these remedies are a recess and a continuance. Buchannon v. State, 554 So.2d 477 (Ala.Crim.App.), cert. denied, 554 So.2d 494 (1989); McLemore v. State[, 562 So.2d 639 (Ala.Crim.App. 1989)]. `Moreover, the trial court should not impose a sanction which is harsher than necessary to accomplish the goals of the discovery rules.' McCrory v. State, 505 So.2d 1272, 1279 (Ala.Crim.App. 1986); Pilley v. State, 789 So.2d 870, 881
(Ala.Crim.App. 1998)." *Page 190 
804 So.2d at 284 (emphasis supplied). With these basic principles in mind, we must now determine whether, in this case, the circuit court's sanction was "harsher than necessary to accomplish the goals of the discovery rules." McCrory v. State,505 So.2d 1272, 1279 (Ala.Crim.App. 1986).
An allegation that the State failed to preserve evidence that may be useful to a criminal defendant is governed by the United States Supreme Court's holding in Arizona v.Youngblood, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281
(1988); the Court held that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." 488 U.S. at 58, 109 S.Ct. 333.
Since the United States Supreme Court's decision in Arizonav. Youngblood, we have addressed whether the State's failure to preserve evidence on a number of occasions mandates the reversal of a defendant's conviction. As we explained inMay v. State, 710 So.2d 1362 (Ala.Crim.App. 1997):
 "The Alabama Supreme Court, in Ex parte Gingo, 605 So.2d 1237 (Ala. 1992), adopted the United States Supreme Court's position in Arizona v. Youngblood, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988), regarding the allegations that the state failed to preserve evidence potentially useful to the defense:
 "`"[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." Youngblood, 488 U.S. at 58, 109 S.Ct. at 337. "The presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." Youngblood, 488 U.S. at 57 (footnote), 109 S.Ct. 333 (footnote), citing Napue v. Illinois, 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959).'
 "605 So.2d at 1240-41. Gingo additionally recognized that a defendant's right to due process can be violated when the loss or destruction is of evidence so critical to the defense that its loss or destruction makes the trial fundamentally unfair. Id. (citing Youngblood, 488 U.S. at 67, 109 S.Ct. at 342)."
710 So.2d at 1369-70. See also Snyder v. State,893 So.2d 488, 528 (Ala.Crim.App. 2003), cert. denied, 893 So.2d 563
(Ala. 2004); Griffin v. State, 790 So.2d 267, 292
(Ala.Crim.App. 1999), rev'd on other grounds, 790 So.2d 351
(Ala. 2000).
Recently, this Court addressed whether dismissal of an indictment is an appropriate sanction for a discovery violation in State v. Moore, [Ms. CR-04-0805, July 21, 2006] ___ So.2d ___, ___ (Ala.Crim.App. 2005). We stated:
 "There is no constitutional right to discovery in a criminal case in Alabama. However, Rule 16, Ala.R.Crim.P., as adopted by the Alabama Supreme Court, specifically provides for discovery in criminal cases. Rule 16.5, Ala. R.Crim.P., addresses the sanctions that a court may impose for noncompliance with a discovery order. Rule 16.5, states:
 "`If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection; may grant a continuance if requested by the aggrieved party; may prohibit *Page 191 
the party from introducing evidence not disclosed; or may enter such other order as the court deems just under the circumstances. The court may specify the time, place, and manner of making the discovery and inspection and may prescribe such terms and conditions as are just.'"
 Emphasis added.) Although dismissing the charges is not specifically cited as a sanction in Rule 16.5, this Rule gives a circuit court wide discretion in considering the manner and nature of relief it affords a defendant who has been denied discovery. While we are aware of no reported Alabama case that affirms the dismissal of an indictment based on a prosecutor's Brady violation, it appears from the wording of Rule 16.5, Ala.R.Crim.P., that this sanction may be available based on the circuit court's supervisory powers.
 "In Government of the Virgin Islands v. Fahie, 419 F.3d 249 (3d Cir.2005), the federal district court reversed a lower court's dismissal of the charges against Fahie based on a Brady
violation. The court stated: `Our research discloses no case where a federal appellate court upheld dismissal with prejudice as a remedy for a Brady violation.' 419 F.3d at 254 n. 6. The court then discussed the various federal circuits and their individual responses to prosecutorial misconduct that necessitates a retrial. The court stated:
 "`Given the "societal interest in prosecuting criminal defendants to conclusion," it is especially important in the criminal context that a court applying sanctions for violation of Rule 16 carefully assess whether dismissal with prejudice is necessary to exact compliance with discovery obligations. [United States v.] Coleman, 862 F.2d 455 [(3d Cir.1988)]. In particular, as discussed above, a court must look to both the need to undo prejudice resulting from a violation and the appropriate deterrent value of the sanction in each case.
 "`Other courts have considered the question of when a court may dismiss an indictment under its supervisory powers. The Ninth Circuit has held that "[d]ismissal under the court's supervisory powers for prosecutorial misconduct requires (1) flagrant misbehavior and (2) substantial prejudice." United States v. Kearns, 5 F.3d 1251, 1253 (9th Cir.1993). It has suggested that prosecutorial conduct might satisfy those requirements even where it would fail to justify dismissal under Brady directly. See [United States v.] Ross, 372 F.3d [1097] at 1110 [(9th Cir.2004)]; United States v. Barrera-Moreno, 951 F.2d 1089, 1091 (9th Cir.1991). The Seventh Circuit has adopted a more restrictive approach, holding that a sanction under supervisory powers is only appropriate where the conviction could not have been obtained but for the failure to disclose exculpatory evidence. See United States v. Johnson, 26 F.3d 669, 683
(7th Cir.1994). At least two other circuits instruct courts to balance a number of factors in their choice of a sanction, including "the reasons for the Government's delay in affording the required discovery, the extent of prejudice, if any, the defendant has suffered because of the delay, and the feasibility of curing such prejudice by granting a continuance or, if the jury has been sworn and the trial has begun, a recess." United States v. Euceda-Hernandez, 768 F.2d 1307, 1312 (11th Cir.1985); see also United States v. Wicker, 848 F.2d 1059, 1061 (10th Cir.1988). While we appreciate the importance of all these factors, we *Page 192 
believe that, to merit the ultimate sanction of dismissal, a discovery violation in the criminal context must meet the two requirements of prejudice and willful misconduct, the same standard applicable to dismissal for a Brady violation. Accordingly, we do not expect that trial courts will dismiss cases under their supervisory powers that they could not dismiss under Brady itself.
 "`Neither the trial court nor the Appellate Division systematically considered the factors relevant to a sanction for prosecutorial misconduct, and in particular, the two prerequisites to dismissal with prejudice.'
 "419 F.3d at 258.
 "In United States v. Euceda-Hernandez, 768 F.2d 1307 (11th Cir.1985), the court stated:
 "`In exercising its discretion, the district court must weigh several factors, and, if it decides a sanction is in order, should fashion "the least severe sanction that will accomplish the desired result — prompt and full compliance with the court's discovery orders." United States v. Sarcinelli 667 F.2d 5, 7 (5th Cir. Unit B 1982). See also [United States v.] Burkhalter, 735 F.2d [1327] at 1329 [(11th Cir.1984)]; United States v. Gee, 695 F.2d 1165, 1169 (9th Cir.1983) (citing Sarcinelli supra). Among the factors the court must weigh are the reasons for the Government's delay in affording the required discovery, the extent of prejudice, if any, the defendant has suffered because of the delay, and the feasibility of curing such prejudice by granting a continuance or, if the jury has been sworn and the trial has begun, a recess. Burkhalter, 735 F.2d at 1329; United States v. Hartley, 678 F.2d 961, 977 (11th Cir.1982), cert. denied, 459 U.S. 1170, 103 S.Ct. 815, 74 L.Ed.2d 1014 and 459 U.S. 1183, 103 S.Ct. 834, 74 L.Ed.2d 1027 (1983); Sarcinelli, 667 F.2d at 6-7.
 . . . .
 "`The presence of a clear violation of a discovery order does not excuse a trial judge from weighing the factors cited above and imposing the least severe, but effective, sanction. The purpose of requiring the Government to disclose evidence is to promote "the fair and efficient administration of criminal justice by providing the defendant with enough information to make an informed decision as to plea; by minimizing the undesirable effect of surprise at trial; and by otherwise contributing to an accurate determination of the issue of guilt or innocence." Fed.R.Crim.P. 16
advisory committee note.'
 "768 F.2d at 1312 (footnote omitted).
 "Our neighboring State of Florida in State v. Carpenter, 899 So.2d 1176 (Fla. Dist.Ct.App. 2005), cautioned against dismissing the charges as a sanction for a Brady violation and aptly stated:
 "`Dismissal of an information is, however, an extreme sanction that should be used with caution, and only when a lesser sanction would not achieve the desired result. State v. Thomas, 622 So.2d 174, 175 (Fla. 5th DCA 1993). See also [State v.] Del Gaudio, 445 So.2d [605] at 608
[(Fla.Dist.Ct.App. 1993)] ("Dismissal of an information or indictment is `an action of such magnitude that resort to such a sanction should only be had when no viable alternative exists'") (quoting State v. Lowe, 398 So.2d 962, 963 (Fla. 4th DCA 1981)). Before a court can dismiss an information for a prosecutor's violation of a discovery rule or order, the trial court must find *Page 193 
that the prosecutor's violation resulted in prejudice to the defendant. Thomas, 622 So.2d at 175; Richardson v. State, 246 So.2d 771
(Fla. 1971).
 "`"The obvious rationale for limiting the sanction of dismissal of criminal charges to only those cases where no other sanction can remedy the prejudice to the defendant is to insure that the public's interest in having persons accused of crimes brought to trial is not sacrificed in the name of punishing a prosecutor's misconduct. And, of course, where the prosecutor's failure to make discovery has not irreparably prejudiced the defendant, the sanction of dismissal punishes the public, not the prosecutor, and results in a windfall to the defendant. . . . [T]he rule authorizing the imposition of sanctions for discovery violation was `never intended to furnish a defendant with a procedural device to escape justice[.]'
 "`Del Gaudio, 445 So.2d at 608 (quoting Richardson, 246 So.2d at 774).
 "`The order of dismissal in this case contains no finding of prejudice to the defendant nor does our review of the record support such a finding.'
 "899 So.2d at 1182-83. We agree with the rationale of the Florida appellate court. See also Fahie, 419 F.3d at 259 (`[T]o merit the ultimate sanction of dismissal, a discovery violation in the criminal context must meet the two requirements of prejudice and willful misconduct, the same standard applicable to dismissal for a Brady violation.').
 "Under any analysis, to warrant dismissal of the charges the defendant must show intentional or willful misconduct and prejudice. Even if Moore established intentional and willful misconduct, which we question, the circuit court made no finding that the evidence that was suppressed could not, and has not been, furnished or made available to Moore. The trial court did not consider `the factors relevant to a sanction for prosecutorial misconduct, and in particular, the two prerequisites to dismissal with prejudice.' Government of the Virgin Islands v. Fahie, 419 F.3d at 259."
___ So.2d at ___, ___ (footnotes omitted).
After reviewing the record before us, we find no indication that the lost and/or destroyed audiotape and videotape contained exculpatory evidence. At the pretrial hearing Seawright presented nothing to support his claim that the information on the tapes was exculpatory. Instead, counsel merely stated: "It [evidence from the tapes] could be exculpatory in nature. It could be somebody other than my client." (R. 2, emphasis supplied.) Evidence of a discovery violation must be based on more than speculation and conjecture. See McCart v.State, 765 So.2d 21, 23 (Ala.Crim.App. 1999) (trial court did not err in refusing to compel discovery when motion claimed "that it was `well within reason to suspect that the tape or tapes will contain exculpatory material for at least one, if not more, of these co-defendants'" and in camera review of tapes revealed no exculpatory evidence).
Seawright failed to meet his burden of proving (1) that the tapes contained exculpatory evidence, (2) that the State's loss or destruction of the tapes was the result of intentional or willful misconduct, and (3) that he was prejudiced by the lack of the tapes. Aside from speculating that the tapes might establish that someone other than Seawright sold the drugs to the confidential informant, counsel offered no evidence indicating that the tapes contained exculpatory evidence, that the loss or destruction of the tapes was intentional, or that the lack of the tapes would prejudice *Page 194 
Seawright's case. Nor did Seawright offer any explanation regarding how the tape was critical to his defense. SeeGrissom v. State, 624 So.2d 706, 710 (Ala.Crim.App. 1993) (police destruction of audiotape did not render a fair trial impossible, and, contrary to defendant's claim, audiotape was not the only way to demonstrate his innocence).
Here, just as in State v. Moore, the record is devoid of evidence that would establish either prejudice to Seawright's case or willful misconduct on the part of the prosecution. Because Seawright failed to meet his burden of proof with regard to the alleged discovery violation, the circuit court erred in dismissing Seawright's case.
Based on the foregoing, the judgment of the circuit court is reversed and this case is remanded for the circuit court to set aside its order dismissing the charges and to restore Seawright's case to its active docket.
REVERSED AND REMANDED.
McMILLAN, P.J., and BASCHAB, J., concur. COBB and SHAW, JJ., concur in the result. *Page 784