WISE, Judge.
 

 The appellant, Johnathan Long, appeals from the circuit court’s denial of his petition for postconviction relief filed pursuant to Rule 32, Ala.R.Crim.P., in which he attacked his September 2003 guilty-plea convictions for kidnapping in the first degree, sodomy in the first degree, and robbery in the first degree, and his resulting sentences of 20 years’ imprisonment for each conviction, to be served concurrently. On June 23, 2006, this Court affirmed Long’s convictions and sentences by an unpublished memorandum.
 
 Long v. State
 
 (No. CR-05-0094), 978 So.2d 76 (Ala.Crim.App.2006) (table).
 
 [1]
 
 A certificate ■ of judgment was issued on August 2, 2006.
 

 On March 2, 2007, Long filed this, his first, Rule 32 petition, alleging: (1) that his
 
 *187
 
 guilty pleas were involuntary because, he says, he was coerced by counsel to enter the pleas; (2) that the trial court was without jurisdiction to render judgment or to impose his sentence because, he says, he was never indicted by a grand jury, his indictments were void, and the victim never filed any complaints or appeared before a grand jury; (3) that the trial court abused its discretion when it allowed him to plead guilty to charges for which there was insufficient evidence to support a conviction; (4) that his first trial counsel was ineffective because he allegedly failed to challenge the indictment, was complicit in his denial of a speedy trial, allowed DNA evidence to be destroyed, and conducted no pretrial investigation; (5) that his second trial counsel was ineffective because he allegedly failed to ask for a jury trial and coerced him into pleading guilty; and (6) that his appellate counsel was ineffective for failing to file a motion to withdraw his guilty pleas, a motion for new trial, and a writ of certiorari with the Alabama Supreme Court. On April 19, 2007, the State filed its response and a motion to dismiss, arguing that Long’s petition was both pro-eedurally barred and without merit. On May 14, 2007, the circuit court issued an order denying Long’s petition stating:
 

 “[T]he Court having reviewed [Long’s] Rule 32 Petition and the response thereto provided by the District Attorney’s Office on behalf of the State of Alabama, finds that the petition is without merit. The petition is therefore denied and dismissed.”
 

 (C. 3.) This appeal followed.
 

 On appeal, Long reasserts the claims raised in his petition to the circuit court.
 

 Long raises multiple claims in his first Rule 32 petition, including multiple claims of ineffective assistance of trial counsel. Long’s contentions that his counsel was ineffective appear to satisfy the specificity requirements set forth in Rules 32.3 and 32.6(b), Ala.R.Crim.P.
 
 Heidelberg v. State,
 
 965 So.2d 799, 803 (Ala.Crim.App.2006). Because Long presented allegations that, if true, would entitle him to relief, the circuit court erred in summarily dismissing this petition.
 
 Ex parte Boatwright,
 
 471 So.2d 1257 (Ala.1985).
 

 We recognize the heavy caseload under which the trial courts of this State toil, and we are aware that Rule 32 petitions add to that already heavy burden. However, in this case, we are left with a petition that articulated at least some claims that were minimally sufficient grounds to warrant a response and an order stating no grounds for the denial of the petition.
 

 This case is remanded to the circuit court with the instructions that the court enter a new order that specifically addresses Long’s claims. Should the circuit court deem it necessary to hold an eviden-tiary hearing addressing Long’s claims, the court’s return to remand shall include a transcript of those proceedings. We note that Rule 32.9(d), Ala.R.Crim.P., requires the trial court to “make specific findings of fact relating to each material issue of fact presented.” See also
 
 Ex parte Walker,
 
 652 So.2d 198 (Ala.1994); and
 
 Smith v. State,
 
 665 So.2d 954 (Ala.Crim.App.1994).
 

 Finally, we note that
 

 “ ‘if the court finds that a particular allegation fails to meet the requirements of specificity of Rule 32.6(b), we encourage the court to so note with particularity in its written findings. It is to do likewise if it finds that a
 
 *188
 
 particular allegation fails to state a claim or to present any material issue of fact or law that would entitle [the petitioner] to relief. In other words, the court’s written findings are to address individually each claim not precluded by Rule 32.2.’
 

 “Harper v. State,
 
 676 So.2d 949, 950 (Ala.Crim.App.1995), aff’d on return to remand, 698 So.2d 796 (Ala.Crim.App.1996) (table). Finally, if the court’s findings are based on its personal knowledge of [the petitioner’s] guilty-plea proceedings, then the order should so state. See
 
 Sheats v. State,
 
 556 So.2d 1094, 1095 (Ala.Crim.App.1989).”
 

 Dedeaux v. State,
 
 976 So.2d 1045, 1049-50 (Ala.Crim.App.2005). These findings should be contained in the circuit court’s new order ruling on Long’s petition. The trial court shall take all necessary action to see that the circuit clerk makes due return to this Court at the earliest possible time and within 56 days of the release of this opinion.
 

 REMANDED WITH DIRECTIONS.
 
 *
 

 BASCHAB, P.J., and McMILLAN, J„ concur.
 

 SHAW, J., concurs in the result.
 

 WELCH, J., dissents.
 

 [1]
 

 . In affirming Long’s conviction, this Court stated:
 

 "Before entering his pleas, Long reserved the right to appeal the trial court’s order denying his motion to dismiss the charges. Long argued in support of his motion to dismiss that critical evidence had been destroyed and was, therefore, unavailable for additional testing. Accordingly, the sole issue presented on appeal is whether the trial court abused its discretion in denying Long’s motion to dismiss the indictments. See
 
 Hunter v. State,
 
 867 So.2d 361, 362 (Ala.Crim.App.2003) (’[wjhether a trial court's denial of a motion to dismiss an indictment was error is reviewed under an abuse-of-discretion standard of review').
 

 "The record reveals the following pertinent facts. On November 4, 2001, the victim, L.D.M., was kidnapped, sexually assaulted, and robbed by three black males. Among other pieces of evidence gathered by the State, a DNA sample was taken from the victim's blue jeans and a sock. The State sent that sample to the Alabama Department of Forensic Sciences ('DFS') for testing, along with a blood sample from Long. DFS received the samples on November 19, 2001, and December 6, 2001, and released its report on August 6, 2002, in which it concluded that DNA found on the victim’s jeans and sock matched Long's DNA.
 

 "On March 20, 2003, the trial court, on motion by Long, approved up to $2,500 for an independent test of the samples to be made and ordered the Bessemer Police Department to provide the evidence to the UAB School of Medicine's DNA testing lab. UAB received the victim's jeans and sock on March 28, 2003; it received Long's blood sample on April 25, 2003. On May 7, 2003, UAB released its report in which it also concluded that Long could not be excluded as a possible contributor to the sample taken from the victim's sock and that the DNA found on the victim's jeans matched Long's DNA.
 

 “On September 23, 2003, Long entered conditional guilty pleas to first-degree robbery, first-degree kidnapping, and first-degree sodomy. Sentencing was deferred pending Long's cooperation with the State in prosecuting the other men involved in the assault and a recommendation by the State as to the sentences. On November 9, 2004, UAB faxed a copy of a form to Long's attorney, Garry Abbott, seeking permission
 
 *186
 
 to destroy the evidence in its possession. Abbott executed that form and returned it to UAB on November 9, 2004, assuming, according to the trial court, that he was agreeing only to the destruction of the blood sample that had been provided by Long. On June 20, 2005, Long filed a motion seeking to enforce an agreement that he said he had with the State that he would receive 20-year split sentences in exchange for his cooperation. The trial court denied that motion, but set aside his guilty pleas and set the case for trial.
 

 “At a pre-trial hearing on September 13, 2005, Long, who was then represented by new counsel, moved to dismiss the charges, arguing that UAB’s destruction of the evidence precluded him from having the DNA sample from the victim's jeans and sock tested again by an independent lab. Long argued that the lab at UAB had lost its accreditation at the time it analyzed the sample and that he was prejudiced by his inability to have the sample independently tested by an accredited lab. Long also argued that he was prejudiced by the fact that his previous attorney, Abbott, had a conflict of interest, in that he might be called as a witness by the State to testify that he had approved the destruction of the evidence. The State argued that it did not order the destruction of the evidence and that it was not culpable in connection with the destruction of the evidence. No evidence was presented as to the accreditation status of UAB's DNA lab at the time it analyzed the DNA sample taken from the victim’s clothes. Although it expressed concern over the destruction of the evidence, the trial court denied Long’s motion to dismiss and accepted Long’s guilty pleas.
 

 "For this Court to find a violation of due process because the evidence was destroyed by UAB, we must consider 1) the culpability of the State, 2) the materiality of the destroyed evidence, and 3) the sufficiency of the other evidence, in order to determine whether Long suffered substantial prejudice. See, e.g.,
 
 Grimsley v. State,
 
 678 So.2d 1197 (Ala.Crim.App.1996), discussing
 
 Ex parte Gingo,
 
 605 So.2d 1237 (Ala.1992). The record in the present case indicates that the State was in no way responsible for the destruction of the evidence. Long's attorney authorized UAB to destroy the DNA sample taken from the victim's clothes. Although UAB had been in possession of the evidence for over a year and a half when it received authorization from Abbott to destroy the evidence on November 9, 2004, Long had entered conditional guilty pleas on September 23, 2003, based, at least in part, on UAB’s test results that implicated him in the assault on the victim. As the trial court noted, the State could have taken steps to retrieve or secure the evidence after UAB released its report; however, based on our examination of the record, we find no bad faith on the part of the State and no culpability that would weigh heavily in Long’s favor. Furthermore, Long received from UAB an independent analysis of the DNA sample taken from the victim’s clothes. The results of that analysis were not favorable to Long. Although Long's counsel asserted that UAB had lost its accreditation at the time it performed its analysis, no evidence was introduced to substantiate that assertion. Thus, because he offered no evidence indicating that the UAB analysis was unreliable, Long did not establish that the destroyed evidence was material to his defense. For all that appears in the record, Long asked for, and received, an independent analysis of the evidence. Finally, although there was no trial, the record suggests that the State could have submitted other evidence of guilt at trial. The record indicates that the victim was able to give the police a physical description of each of the men who assaulted her. Witnesses also saw Long at one of the locations where the assault occurred, i.e., an abandoned trailer, and items relevant to the case, i.e., a walkie talkie and a towel ‘from a motel' (R. 4), were found in Long's vehicle when he was arrested. The victim reported to the police that her attackers had communicated with walkie talkies. The towel may have come from the Marriott Hotel in Homewood, where the assault on the victim apparently began. In addition. Long made a statement to the police ‘that he didn't hurt the women [sic] and asked what was in it for him if he told who else was involved.' (R. 4.)
 

 “Based on our review of the record, we conclude that the State was not culpable in the destruction of the evidence and that the evidence destroyed was not so critical to the defense as to deny Long due process and make his convictions fundamentally unfair.
 

 "As for Long's argument that he was denied conflict-free counsel because Abbott had authorized UAB to destroy the evidence, the record indicates that Long was
 
 *187
 
 not represented by Abbott when he entered his guilty pleas on September 13, 2005. Long had new counsel at that stage of the proceedings. We find no merit in this argument."
 

 *
 

 Note from the reporter of decisions: On October 17, 2008, on return to remand, the Court of Criminal Appeals affirmed, without opinion. On December 5, 2008, that court denied rehearing, without opinion. On February 13, 2009, the Supreme Court denied certiorari review, without opinion (1080356).