BURKE, Judge.
Allison Carter Pickering pleadéd guilty to chemical endangerment of a child, a violation of § 26-15-3.2(a)(l), Ala.Code 1975, and was sentenced to eight years, that sentence was suspended, and she was ordered to serve 12 months in Community Corrections followed by 36 months of probation.
Pickering filed a motion, to suppress the test results of the urine samples collected from her and her baby because the samples were destroyed after they were tested. She argued that her inability to obtain independent testing rendered the introduction of the results fundamentally unfair.
A hearing was' held on the motion to suppress. At the hearing, defense counsel stated:
“Ms. Pickering gave birth to a child May 30th, 2012. At some point, while she was in the hospital unbeknownst to her á urine sample was taken. It was later tested by the hospital, and I believe they may have sent it somewhere, Judge. It’s not clear from' our record where they sent it to. And the report .-was that that test, that urine sample, tested positive for amphetamine and methamphetamine.
“Following her arrest, Judge, we asked the State of Alabama through the district attorney to provide us with discovery. The discovery included all of the medical records from Highlands Medical, any tests, et cetera. We asked specifically for the samples. We were going to ask this Court to allow us funds, certain funds, for an expert' to retest that sample. We’ve been told by the State of Alabama, we believe it is true, that, that sample, that evidence, has, in fact, been destroyed. And that is the basis, Judge, of why we have filed this Motion to Suppress:”-.
*982 (R. 2-3.) Defense counsel acknowledged that both Pickering and her baby tested positive for methamphetamine and amphetamine. He argued that the defense was uncertain as to who had destroyed the samples, but that after they were sent to the lab, “someone in the chain of custody then destroyed [them].” (R. 4.) Defense counsel argued that the State had a duty to maintain the evidence. Arguments as to the law were made by both sides, and the prosecutor noted that Pickering could have requested the sample during the period of time that it was kept by the hospital because she had been told that the samples tested positive. Defense counsel then objected because such statements by the prosecutor required testimony by hospital employees. The court noted: “It’s argument.” (R. 20.) The State further argued that the urine tests were not requested by the State and were not for law-enforcement purposes; rather, the tests were made for purposes of treatment and diagnosis.
The State thereafter filed a response, setting forth its factual allegations and arguing that the destruction of the samples was done independently of any knowledge by the State and therefore there was no bad faith. Moreover, the State argued, Pickering could call expert witnesses to review the tests and the results and could cross-examine State’s witnesses who would testify concerning Pickering’s drug use and her exposure of the baby to drugs.
Pickering filed an objection to the State’s response and alleged that the State was attempting to testify by including its statement of the facts in its response. Pickering requested an evidentiary hearing.
The State then responded to Pickering’s objection and stated that it was not attempting to testify; rather, it “only sought to express what the State expect[ed] the evidence to show.” (C. 29.) It therefore requested that its prior response be amended to reflect that intention. The State further noted that defense counsel had stated that he would stipulate to the facts. Defense counsel, by motion, responded that the only fact to which he had stipulated was that the hospital records showed a positive result for drug use, and he again requested a hearing.
The court issued an order finding:
“In the case at Bar today, this court follows the direction of the Alabama Court of Criminal Appeals in making its analysis and looks similarly to determine whether the lost or destroyed object— the urine samples — prevents the Defendant from presenting a valid defense, using this analysis, to-wit:
“(1) Culpability of the State
“There is no State culpability present. The samples were taken, analyzed and destroyed by the physician, by the hospital or its agents, a physician and a hospital selected by the Defendant herself. There is absolutely no state actor involved, at least as far as the court is informed. The urine samples were not taken, analyzed nor destroyed by the State, by the police, or by any other State or law enforcement actor.
“(2) Materiality of the missing urine sample
“The court in Scott above, quoting the United States Supreme Courts Trombet-ta decision, announced this materiality standard:
“ ‘To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. Califor *983 nia v. Trombetta, 467 U.S. 479, 489, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984).’
“In the instant case, Ms.-Pickering’s urine samples apparently had no exculpatory value at all inasmuch as they tested positive for illegal substances when her physician and her hospital had them tested. The samples were inculpa-tory, certainly not exculpatory. Moreover, any exculpatory value those samples may have had could not have been apparent to the State before Ms. Pickering’s physician and Ms. Pickering’s hospital destroyed them. Ms. Pickering had the only means to obtain comparable samples of her own urine and that of her infant. She could have immediately requested that the same samples be tested again. She could have presented herself at any number of locations in this county which perform urinalysis drug testing and sought her own testing of her own urine. She could have attended the shelter care hearing held in the Jackson County Juvenile Court two days after the birth where a court-appointed lawyer waited to help her — but she did not. She could have remained in the hospital and requested re-testing or additional testing. She did not; rather she eloped from the .hospital in the middle of the night — most likely fleeing to avoid arrest.
“Therefore, [Pickering’s] motion to suppress fails under the three prongs of the Trombetta Court’s materiality analysis alone.
“(3) Prejudice to [Pickering]
“The evidence of the positive! urine samples is prejudicial to [Pickering]. All adverse evidence is prejudicial or it would be irrelevant. Nonetheless, it is not so prejudicial that it should be excluded on any grounds presently before the court, much less on the ground that the urine samples were destroyed before they could be re- or independently tested.
“Conclusion:
“Ms. Pickering’s arguments fail on all three bases of analysis:' culpability, materiality and prejudice.
“Ms. Pickering’s arguments further fail the test of common sense. It makes no sense to allow a defendant to fail a drug test, abscond from the hospital or other testing facility where that test was conducted and then complain that she had no opportunity to have the samples retested by another lab or had no opportunity to have other samples tested. Her own act of fleeing the hospital— again, the same hospital and the. same physician selected by her — is the act that precluded additional or further testing.
“Upon due consideration of the arguments of counsel and the'authorities cited by counsel, the motion to suppress is DENIED.
' “The objection to the State’s, post-hearing submission is DENIED and OVERRULED.
“The Defendant’s post-hearing motion for an evidentiary hearing is DENIED. The trial will be the evidentiary hearing and the court may (emphasis on may) revisit the issue at that time and the jury certainly will consider the facts in reaching a decision.”
(C. 34-36).
Thereafter, Pickering entered into- a plea agreement and, following a guiltyrplea proceeding, pleaded guilty. Pickering reserved for appeal the issues of the. denial of her suppression motion, and the denial of her request for a subsequent hearing.
On appeal; - Pickering argues that the -trial • court erred by denying her motion to suppress because the State failed to produce any witness testimony from someone *984 with personal knowledge of the matters at hand. She also argues that, because the urine samples were destroyed, her trial would have been rendered fundamentally unfair by the admission of the test results.
I.
Pickering argues that the hearing consisted of the prosecutor testifying to facts that were outside his knowledge. However, the prosecutor stated numerous times during the hearing that he expected that the evidence would show the facts he was pleading. He also argued that he expected that witnesses would give certain testimony. Moreover, the trial court stated during the hearing arid in its order that it may change its ruling during trial. Thus, the court did not foreclose the possibility of a motion to suppress during trial.
According to itule 104(c), Ala. R. Evid.:
, “.(c) Hearing or Presence of Jury. In criminal cases, hearings on the admissibility of confessions or evidence alleged to have been obtained unlawfully shall be conducted out of the hearing and presence of the jury. Hearings on other preliminary matters shall be conducted out of the hearing and presence of the jury when the interests of justice require.”
Although neither party presented witness testimony, Pickering received a hearing. Each party presented lengthy arguments and made proffers as to what the evidence would show at trial. There is no indication in the record that justice was not served because the State did not present its case in a pretrial hearing. See Charles W. Gamble and Robert J. Goodwin, MoElroy’s ' Alabama . Evidence, § 10.0i(3)(c)(6th ed, 2009)(“Hearings on any other preliminary matter [other than admissibility of confessions or evidence alleged to have been obtained unlawfully] must be conducted out of the presence and hearing of the jury only if justice requires it. Such a decision is vested in the sound discretion of the trial judge.” (footnotes omitted)). There was no abuse of discretion by the trial court’s decision to forgo a subsequent hearing before trial. The judge acknowledged in his order that, depending on the evidence presented at trial, he may change his mind. Pickering chose to enter a guilty plea rather than question witnesses at trial .concerning the- destruction of the samples or to move again to suppress them at trial. The pretrial denial of Pickering’s motion to suppress did not adversely affect her substantial-. rights. Rule 45, Ala. R.App, P. Moreover, Pickering acknowledged that the hospital tested her blood and that of her baby and that the results were positive for the presence of methamphetamine and amphetamine; any independent testing may have challenged those results but would, not have changed them. Credibility choices are matters for the jury.
II.
The trial court did not erroneously deny Pickering’s motion to suppress the test results because the samples had been destroyed.
“For this court to find a violation of due process because evidence has been lost, we must consider (1) the culpability of the prosecution, (2) the materiality of the lost evidence, and the (3) sufficiency of the other evidence.” Grimsley v. State, 678 So.2d 1197, 1206 (Ala.Crim.App.1996). Here, there was no indicia of culpability by the State. The testing was done by an independent hospital for purposes of treatment when Pickering, as a patient, gave birth.
“‘[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due *985 process of law.’ [Arizona v.] Youngblood [, 488 U.S. 51] at 58, 109 S.Ct. [333] at 337 [(1988)]. ‘The presence or absence of bad'faith by the police for purposes of the Due' Process Clause must necessarily turn on- the police’s knowledge of the exculpatory value of' the. evidence at the time it was lost or destroyed.’ Youngblood, 488 U.S. at 57 (footnote), 109 S.Ct. at 337 (footnote), citing Napue v. Illinois, 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959).”
Ex parte Gingo, 605 So.2d 1237, 1240-41 (Ala.1992).
“In [Arizona v.] Youngblood, [488 U.S. 51 (1988),] the Supreme Court cited California v. Trombetta, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984), which involved a drunk driving prosecution:
“‘The defendants sought to suppress the "test results [indicating the concentration of alcohol in the defendants’ blood] on the ground that the State had failed to" preserve the breath samples used in the test. We rejected this argument for several reasons: first, “the officers here were acting in ‘good faith and in accord with their normal practice,’ [Trombetta,] at 488, 104 S.Ct. at 2533, quoting Killian v. United States, 368 U.S. 231, 242, 82 S.Ct. 302, 308, 7 L.Ed.2d 256 (1961); second, in the light of the procedures actually used the chances that preserved samples would have exculpated the defendants were slim, 467 U.S., at 489, 104 S.Ct., at 2534; and third, even if the samples might have shown inaccuracy in the tests, the defendants had “alternative means of demonstrating their innocence.” Id., at 490, 104 S.Ct., at 2534.’
“Youngblood, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988).”
Ex parte Gingo, 605 So.2d 1237, 1240 (Ala.1992).
The test results of the samples from an independent hospital were not exculpatory but instead indicated Pickering’s guilt. Thus, the indication that the samples would have rendered different results if tested ‘ independently was unlikely and therefore any prejudice to Pickering caused by their destruction is likewise unlikely. Moreover, although the trial court determined that the results could be admitted at trial, Pickering could confront and cross-examine the witnesses concerning the tests and results and the weight to be given that evidence would be a matter for the jury. Gamble, McElroy’s Alabama Evidence, § 10.01(3)(e). The prosecutor further • proffered that the State would present other witnesses to testify as' to Pickering’s drug use and her exposing herself and her child to 'drugs. Under these circumstances, the trial court did not abuse its discretion in determining that the destruction of th¿ urine samples did not mandate that the test results of those samples be suppressed from evidence.
Based on the forgoing, the trial court’s judgment is due to be affirmed.
AFFIRMED.
WINDOM, P.J., and JOINER, J., concur.. KELLUM, J., concurs in the result. WELCH, J,, dissents, with opinion.